STATE, RESPONDENT, v. JOHNSON, APPELLANT.

(No. 4,957.)

(Submitted February 7, 1922. Decided March 9, 1922.)

[205 Pac. 661.]

*Criminal Law—Intoxicating Liquors—Trial—Exclusion of Witnesses—Violation of Order—Refusal to Admit Testimony—When Prejudicial Error—Detectives—Evidence—Admissibility—Trial.*

Criminal Law—Exclusion of Witnesses—Violation of Rule—Refusal to Admit Testimony—When Reversible Error.
  1. Refusal to permit a witness for defendant in a criminal prosecution to testify on a matter material to his defense, on the ground that the witness had violated an order of court excluding witnesses

---

1. Effect of disobedience of rule excluding witness from courtroom during trial, see note in 9 **Ann. Cas.** 368.
  *Died May 18, 1922.
  †Appointed May 24, 1922, to fill vacancy caused by death of THE HON. FRANK B. REYNOLDS.

(503)

during the taking of testimony, is reversible error where the witness was ignorant of the rule and neither defendant nor his counsel was responsible for or knew of his presence in the courtroom.

Same—Trial—Exclusion of Witnesses—Violation of Order—Remedy—Contempt.

2. For a willful violation of an order of court excluding witnesses from the courtroom during the course of a trial, the proper remedy is punishment of the witness for contempt.

Same—Intoxicating Liquors—Detectives—Evidence—Admissibility.

3. The testimony of detectives or decoys employed to ferret out infractions of the prohibition law is competent, the weight and credibility to be given to their evidence, however, being matters proper for consideration of the jury.

*Appeals from District Court, Fergus County; Rudolf Von Tobel, Judge.*

A. D. JOHNSON was convicted of selling intoxicating liquor and appeals from the judgment and an order denying him a new trial. Reversed and remanded.

*Mr. J. C. Huntoon*, for Appellant, submitted a brief and argued the cause orally.

The cases seem to be almost unanimous on the proposition that a witness who has inadvertently or without the fault of the party calling him been in the courtroom during a portion of the time when a rule of exclusion has been invoked against the witnesses is not disqualified from testifying through such failure to observe the rule; that his testimony ought not to be rejected, thereby depriving the party who called him of his testimony; but that such violation ought only to affect the witness' credibility in case disobedience of the rule was involuntarily or without the knowledge of the party calling him, or if it were done knowingly, then the witness would be subject to punishment for contempt in disobeying the order. (See *Palmer* v. *People*, 112 Ill. App. 527; *Loose* v. *State*, 120 Wis. 115, 97 N. W. 526; *Bell* v. *State*, 44 Ala. 393; *State* v. *Falk*, 46 Kan. 498, 26 Pac. 1023; *Lassiter* v. *State*, 67 Ga. 739; *Friedman* v. *Myers*, 14 N. Y. Supp. 142; *State* v. *David*, 25 Ind. App. 297,

3. Competency of private detective as witness, see note in **Ann. Cas.** 1917A, 589.

[62 Mont. 503.]

58 N. E. 83; *Cook* v. *State,* 30 Tex. App. 607, 18 S. W. 412; *Pile* v. *State,* 107 Tenn. 532, 64 S. W. 477; *State* v. *McDonald,* 51 Mont. 1, 149 Pac. 279..

*Mr. Wellington D. Rankin,* Attorney General, and *Mr. L. A. Foot,* Assistant Attorney General, for Respondent, submitted a brief; *Mr. Foot* argued the cause orally.

MR. JUSTICE GALEN delivered the opinion of the court.

In this case the defendant was charged by information with a misdemeanor, it being alleged that at Lewistown, in Fergus county, he did, on or about August 28, 1920, sell intoxicating liquors contrary to the law. The case was tried to a jury and upon a verdict of guilty, wherein the punishment was left to be fixed by the court, sentence was imposed upon the defendant to pay a fine of $300 and to serve a term of two years' imprisonment in the Fergus county jail. At the beginning of [1] the trial, on application of defendant's counsel, the rule excluding witnesses during the taking of testimony was ordered. The appeal is from the judgment and from an order denying defendant's motion for a new trial.

Several errors are assigned, but one of which requires consideration for the proper disposition of this appeal. It is urged that the court erred in sustaining objection to the giving of testimony by the witness Roy E. Ayers, and in overruling the defendant's offer of proof in connection therewith. The objection, ruling of the court, and offer of proof are shown by the record as follows:

"Roy E. Ayers, called as a witness on behalf of defendant, and being first duly sworn, was interrogated as follows:

"Direct examination by Mr. Huntoon: Q. You may state your name.

"Mr. McConochie (County Attorney): Just a minute; if it please the court, we object to the testimony of this witness for the reason that the rule was made at the beginning of this case that all witnesses, both on the part of the defense and the prose-

cution, should be excluded from the courtroom, and this witness has been in the courtroom during the trial of this case.

"Mr. Huntoon: I will submit to the court that he has not been in the courtroom.

"Witness: Yes, Mr. Huntoon, I came in and sat down there a moment, but this rule is news to me, and the county attorney saw me sitting there, and didn't call my attention to it.

"Mr. Huntoon: I will say we didn't discover until the very last minute here that this man on the 21st was in Stanford, this gentleman here and two others. As soon as I found that out, I got subpoenas out.

"The court: The judge was in here for about ten minutes, I think.

"Mr. Huntoon: I don't think he has been in here since subpoena was served on him.

"Witness: Yes; I was in here, but I didn't know anything about the rule; I wouldn't violate any rule.

"Mr. McConochie: We object to the testimony of this witness under the rule of the court.

"The Court: I don't see how I can do otherwise than to sustain it. I didn't know that Judge Ayers was a witness, or going to be, or I would have told him, and he knew nothing about the rule.

"Mr. McConochie: No, but, your honor, it was the bailiff's instructions—

"Mr. Huntoon (Interrupting): Why, if the court please, assume that a man doesn't know anything about a case, and happens to drop into this courtroom; I discover that he is a witness, and I have a subpoena issued and served upon him.

"The Court: Did you know it before he came in here?

"Mr. Huntoon: I did not. I didn't know the situation here until these men gave these dates here.

"The Court: Mr. Huntoon, that is after we had resumed the testimony in here, after I had waited for you to have a witness come up from town; it was after we had resumed in

here that Judge Ayers and Judge De Kalb came in and sat down there for probably ten minutes.

"Mr. Huntoon: Well, I didn't know anything about that; if I had, I certainly—because I had subpoenas out for the judge at that time.

"Witness: I came in the minute I was subpoenaed.

"The Court: I don't see how I can do other than sustain the objection, since it is made.

"Mr. Huntoon: Well, if the court please, we have no means of proving—

"Mr. McConochie (Interrupting): We object to the remarks of counsel at this time.

"Mr. Huntoon: If you will let me use his check, Mr. Mc-Conochie, I will be satisfied.

"Mr. McConochie (Interrupting): We object to the remarks of counsel.

"Mr. Huntoon (Continuing): To fix these dates.

"Mr. McConochie: And ask they be stricken from the record.

"The Court: Sustained. Strike them out.

"Mr. Huntoon: I would like to make an offer of proof by this witness.

"The Court: You may.

"Mr. Huntoon (out of hearing of the jury): The defendant offers to prove by the witness Roy E. Ayers, whose testimony has been objected to and objection sustained by the court, that on the fourteenth day of August, 1920, at the town of Stanford, he met the defendant, and knows of his being present a greater portion of that afternoon, and I think part of the evening; and on the twenty-first day of August, 1920, he has personal knowledge of the defendant being present with Perry Irish in the town of Stanford; and that he was there and talked with him and saw him at that time, and that both of these dates are susceptible of proof by checks that the witness Ayers had cashed on those dates in the town of Stanford, one on the 14th of August, and one on the twenty-first day of August, 1920.

"Mr. McConochie: To which the state objects for the reason that under the prior ruling of the court all witnesses were to be excluded, both for the defense and the state, and that this witness was present in the courtroom during the trial of the action, and after he knew he had been subpoenaed to appear as a witness in the case.

"Mr. Huntoon: I would like to add to that offer of proof.

"The Court: You might put in there 'but without any knowledge by Judge Ayers of the rule.'

"Mr. Huntoon: I should like to add to that offer of proof by this witness Ayers that I expect to prove these dates, the 14th and 21st by these checks, which I have no means of proving by the recollection of the other witness called in that respect. (Objection sustained, exception noted, witness excused.)"

In support of the charge, the state introduced two witnesses, George Bender and M. J. Ryan, both of whom were paid detectives, or decoys, in the employ of the county attorney. The first of these witnesses, Bender, testified that on August 28, 1920, between the hours of 9 and 10 o'clock P. M., he entered the Silver Dollar, conducted by the defendant, and asked the bartender, Mr. Refer, for a "shot." He testified: "Well, I went in there and called for a shot. What I called for in there to Mr. Refer, whatever is his name, and he gave me a drink of whisky over the bar. I paid fifty cents. I asked him if I could get a pint; he said, 'Yes.' * * * Mr. Refer went to work and selled a pint of whisky over the bar, behind the bar, and I was standing alongside the bar, and I handed a $5 bill and some silver, $6. * * * I gave him a $5 bill and a silver dollar, so I took the bottle and put it in my pocket. He gave me another drink for his treat. * * * Mr. Johnson was sitting in the back end, and some men around the table two or three—I wouldn't say how many—and furthermore, I couldn't tell if Mr. Johnson noticed it or not."

He further testified that on Saturday, August 21, 1920, between 8 and 9 o'clock in the evening, he bought a drink in the

Silver Dollar, and as to the person who sold it to him, he testified: ''Q. And whom did you buy that from? A. I believe from my knowledge I bought that from Mr. Johnson. Q. The defendant in this case? A. Yes, sir. Q. Well, you know, don't you? A. I believe I do.'' The bottle, containing what remained of the whisky purchased by the witness from the bartender Refer on August 28, 1920, was introduced in evidence against the defendant.

The witness Ryan testified to having bought two drinks from the defendant, Johnson, in the Silver Dollar on Saturday, August 21, 1920, at 5 o'clock in the evening, and that the defendant, Johnson, drank one of the drinks so purchased; that again on Sunday morning, the twenty-second day of August, 1920, at about 8:30, he made purchase of two drinks from the bartender Refer, the defendant Johnson being present, and that Johnson drank one of such drinks; and that again on Sunday evening between 7 and 9 o'clock, he bought eight drinks from the defendant, Johnson, four at a time; and that again on August 23, at about 5 o'clock in the afternoon, he purchased four drinks from the defendant Johnson, two other men, strangers to the witness, and Johnson joining in the treat; his testimony in this respect being as follows: ''Q. On the 23d, did you make any purchases from Red Johnson? A. I did. Q. About what time of the day was that? A. About 5 o'clock in the afternoon. Q. And what did you purchase at that time? A. Whisky. Q. And did you pay for it? A. Yes, sir. Q. To whom did you make the payment? A. Red Johnson. Q. Do you remember how many drinks were purchased at that time? A. Four drinks. Q. Did you drink them all yourself, or was someone else present? A. Two other men there, and Red Johnson and myself. Q. This was the twenty-third day of what month? A. August. Q. In what year? A. 1920.'' Upon this testimony the state elected as the date of the offense charged August 23, 1920.

The defendant, having been called to the stand as a witness in his own behalf, denied all knowledge of the whisky sales

alleged to have been made in his place of business, and said that as near as he could fix the date he was at Stanford, thirty-five miles from Lewistown, on August 21, 1920, in company with Deputy Sheriff Perry Irish, and that they returned home that evening after supper by way of Denton, the distance from Stanford to Denton being approximately twenty-five miles, and that they did not reach Lewistown until about 2 o'clock A. M., the morning of the 22d of August.

Irish, called as a witness for defendant, corroborated the defendant's testimony regarding their having been in Stanford, and having there met Judge Roy E. Ayers, but was unable to fix the date positively. Thereupon Judge Ayers was subpoenaed and called as a witness in order to fix the date when the defendant claimed to have been in Stanford, namely, August 21, 1920, and his evidence was excluded as heretofore indicated.

The only possible theory upon which the testimony of the witness Bender was admissible, and that of Ryan, respecting the sale of whisky made other than on August 23, 1920, was to show a disposition to commit like offenses and continued law infractions of like character in proof of the particular charge. Section 10660, Revised Codes, 1921, provides: "If either party requires it, the judge may exclude from the courtroom any witness of the adverse party, not at the time under examination, so that he may not hear the testimony of other witnesses." In case of violation of an order of exclusion, the proper remedy [2] to be adopted by the court is to punish the offender for contempt, in the absence of a showing of connivance or collusion on the part of the defendant or his counsel, rather than to deprive the defendant of material evidence in his defense. To deprive a party of his witness because of misconduct which the party has not caused, procured, or permitted would be to punish the innocent. (*Palmer* v. *People,* 112 Ill. App. 527.) The direct punishment for the offense should be visited upon the offender himself as for a contempt of court, and not go to

the extent of denying the accused the right of making his defense. (*Loose* v. *State*, 120 Wis. 115, 97 N. W. 526.)

Refusal to permit a witness to testify in a criminal case on the ground that he had violated the order excluding witnesses is reversible error where neither the state nor the defendant was responsible for the violation of the order and did not know he was present. (*State* v. *David*, 25 Ind. App. 297, 58 N. E. 83.)

In a quite similar case involving an order of exclusion made by the trial court under the statute above cited, it appears that at the request of the defendant the presiding judge required all witnesses to be excluded, and that the witness Keller, a deputy sheriff in charge of the defendant, and who held him in custody, remained thereafter in the courtroom. The deputy sheriff had not been served with a subpoena, and the county attorney did not know when the order was made that it would be necessary to call him to testify. Later it appeared that his testimony would be substantial and material, and when he was called counsel for the defendant objected on the ground that he had disqualified himself from testifying by disobeying the order of exclusion. The court overruled the objection, and allowed him to testify. This court in passing upon the question on appeal held that there was no error, and through Mr. Chief Justice Brantly said: ''The order of exclusion could not apply to anyone who did not expect to be called as a witness. Even if the order had applied to Keller, the penalty for his disobedience should have been inflicted upon him by punishing him for contempt, and not upon the state by excluding his evidence. Of course, in so far as by his conduct in violating such order a witness manifests unusual interest in the result of the trial, he furnishes ground for the jury to question the credibility of his testimony; nevertheless he is not thereby disqualified to testify, nor may the party whose witness he is be deprived of his testimony.'' (*State* v. *McDonald*, 51 Mont. 1, 149 Pac. 279.)

Another case which presents facts not unlike the case before us is that of *Pile* v. *State*, 107 Tenn. 532, 64 S. W. 477, wherein

it appears that the defendant, in order to contradict the material evidence of one of the witnesses for the state, called as a witness one Fox, who resided some distance from the county seat and who was not present when the trial of the case commenced, and who was not expected for some hours, but who in fact arrived late in the day, sooner than was anticipated, and went directly into the courtroom, where he remained, as he supposed was his duty to do, without the knowledge of the defendant or his counsel. The court in passing upon the subject used language which we quote with approval as applicable to the case under consideration: "This disclosure, in our opinion, made a clear and obvious case for the admission of the proposed testimony. The intended witness was entirely without fault, and so were the defendant and his counsel. The testimony rejected was very material to the defense, and might have changed the result. Such being true, the testimony should, undoubtedly, have been admitted. (*Smith* v. *State*, 4 Lea (Tenn.), 428.)"

In *Davis* v. *Byrd*, 94 Ind. 525, the court in discussing the disobedience of a witness who had been placed under the rule as affecting the admissibility of his testimony, said: "A witness who disobeys the order of the court excluding him from the courtroom should be punished, and severely punished, for his disobedience, but this punishment should fall on the guilty person, and not on an innocent party. It is difficult to imagine any principle of law which will justify the punishment of an innocent party for the contumacious behavior of a witness. A litigant has no authority over the witnesses subpoenaed by him, and is not answerable for their wrongful conduct, and he ought not to be denied a right because a wrong has been committed for which he is neither morally nor legally responsible. It may be a very serious punishment to be deprived of the testimony of a witness, and if the party is himself free from fault, this punishment should not be visited on him."

The weight of authority, and we think the better view, is that where the party is without fault and the witness disobeys the

order for exclusion, the party ought not to be deprived of the testimony of the witness. (3 Jones on Evidence, sec. 308; *Holder* v. *United States,* 150 U. S. 91, 37 L. Ed. 1010, 14 Sup. Ct. Rep. 10; *Rooks* v. *State,* 65 Ga. 330; *Lassiter* v. *State,* 67 Ga. 739; *Grant* v. *State,* 89 Ga. 393, 15 S. E. 488; *Cunningham* v. *State,* 97 Ga. 214, 22 S. E. 954; *Hoxie* v. *State,* 114 Ga. 19, 39 S. E. 944; *McWhorter* v. *State,* 118 Ga. 55, 44 S. E. 873; *Davis* v. *State,* 120 Ga. 843, 48 S. E. 305; *State* v. *Ward,* 61 Vt. 153, 17 Atl. 483; *Parker* v. *State,* 67 Md. 329, 1 Am. St. Rep. 387, 10 Atl. 219; *Commonwealth* v. *Brown,* 90 Va. 671, 19 S. E. 447.)

It is settled in this state that the testimony of detectives **[3]** or decoys employed to ferret out infractions of the law is competent. (*In re Wellcome,* 23 Mont. 450, 59 Pac. 445; *State* v. *O'Brien,* 35 Mont. 482, 10 Ann. Cas. 1006, 90 Pac. 514; *State* v. *Tudor,* 47 Mont. 185, 131 Pac. 632; *State* v. *Showen,* 60 Mont. 474, 199 Pac. 917.) But the weight and credibility to be given to such evidence are matters proper for consideration of the jury (40 Cyc. 2654; *State* v. *Showen, supra*), so that the testimony of the witness Ayers was of importance to the defendant as affecting the credibility of the detective witnesses for the state. If the defendant was not in his place of business and could not have been there at the time mentioned by the witnesses on August 21, 1920, evidence showing this fact might have had weight with the jury in determining whether the defendant actually committed the offense charged on August 23, 1920. And had such evidence been admitted it is possible that the jury would have considered the evidence of the detective witnesses so discredited that there would have been an entirely different verdict rendered.

In this case it appears that the witness Ayers was entirely ignorant of the rule of exclusion of witnesses. There was no showing of connivance by the defendant, or knowledge of his presence in the courtroom during the trial; and the defendant should not be penalized by being deprived of such important testimony in defense. If anyone were to blame, it was the

witness who violated the rule, rather than the defendant; and in cases of willful violation of a rule by the witness the remedy is punishment of the witness for contempt. In our opinion the evidence of the witness Ayers was most important to the defendant, and by excluding it the court was in error. It is manifest that gross injustice was perpetrated against the defendant when the court permitted the witnesses to testify to sales of liquor on August 21, and then denied him the right to impeach such testimony. To exclude this evidence, in our opinion, was more than an abuse of discretion; it amounted to a denial of substantial rights of the accused. He was not in any manner accountable for Judge Ayers' presence in the courtroom in violation of the rule of exclusion of witnesses, and should not, on this account, be penalized and denied the right of complete defense.

The judgment and order are reversed and the cause is remanded to the district court of Fergus county for a new trial.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and ASSOCIATE JUSTICES COOPER and HOLLOWAY concur.

MR. JUSTICE REYNOLDS, being absent, takes no part in the foregoing decision.