The STATE OF MONTANA, Plaintiff and Respondent, v. JERRY LATTIN, Defendant and Appellant.

No. 11646.
Decided October 23, 1969.
460 P.2d 94.

James R. Paul, Great Falls (argued), for appellant.

Robert L. Woodahl, Atty. Gen., Helena, Gene B. Daly, County Atty., E. F. Gianotti, Ralph T. Randono, Great Falls, Joseph Gerbase, Asst. Atty. Gen., Helena (argued), for respondent.

MR. JUSTICE HASWELL delivered the Opinion of the Court.

This is an appeal by defendant from an order revoking a deferred imposition of sentence in a criminal case in the district court of Cascade County, the Hon. R. J. Nelson, district judge presiding.

Defendant Jerry Lattin was charged in the district court of Cascade County on January 19, 1968, with the crime of a lewd and lascivious act upon a child. Thereafter defendant plead guilty to this charge. On April 29, 1968 the district court entered its order deferring imposition of sentence upon condition that defendant submit to evaluation and treatment at the Warm Springs State Hospital and thereafter serve any remaining time of a six month period in the Cascade county jail.

Defendant spent approximately one week at the state hospital and the balance of the six month period in the county jail with at least part of such time served on a work-release basis. At the conclusion of the six month period, defendant was released on probation.

On December 3, 1968 the county attorney filed in the district court a petition for revocation of the deferred imposition of sentence previously granted. This was based on 7 alleged acts of indecent exposure by defendant to minor children on various dates between November 1 and November 18, 1968. A hearing thereon was held on December 17 and 18, at which time defendant was present with counsel who cross-examined the state's witnesses. Although the defendant himself did not testify at this hearing, his counsel presented his defense of mistaken identification and alibi through the other witnesses, principally relatives and friends of defendant.

The principal witnesses for the state were the several minor children involved in the incidents. These children ranged in age from 7 through 11. At the inception of the hearing Judge Nelson on his own initiative made the following ruling:

"During the course of this hearing, because of the age of the witnesses and what not, I am going to exclude all witnesses

from the court room with the exception of the defendant, save during the period of time the witness is testifying."

The state commenced its case by calling Officer Macek, a detective in the Great Falls police department; the state's second witness was one of the minor children to whom defendant allegedly exposed himself; and the state's third witness was the mother of this minor child. At the conclusion of this third witness' testimony the following colloquy occurred:

"[Defense counsel] Your Honor, they are putting the witnesses in the window—the kids in the window. They have been standing in the window there and they have been looking at him.

"[Deputy County Attorney] The State has no control over that, Your Honor. Maybe the Bailiff could ask the witnesses—

"THE COURT: The State does have control. When I exclude witnesses from the courtroom, I expect them to be excluded from the courtroom."

This colloquy referred to the discovery by defense counsel that several of the minor children who were to be called as state's witnesses had been peeking through a glass window in the door to the courtroom. It was subsequently developed that the children had also had conversations among themselves concerning the identity of the defendant who was seated in the courtroom at the counsel table between the attorneys for the state and defendant. Nonetheless, the court, over defendant's objection, permitted the children to testify. The substance of their testimony was directed at a description of the exposure incident in which they were involved and identification of the defendant.

The substance of the state's case on identification was that Officer Macek separately approached each of the children involved in each of the incidents after such incidents had been reported to him. He had shown each of the children 9 photographs including one of defendant. Six of the children without

prompting made positive identification of defendant by his photograph.

In addition to the foregoing evidence, personal in-court identification of the defendant was made by the children. This was done by having defendant stand, turn his head sideways, and asking each child whether this was the man who exposed himself to them.

The defendant's case substantially involved alibi witnesses as to his whereabouts at the time of the various incidents coupled with attacks on the children's credibility and their opportunity and ability to observe and identify defendant.

Following the hearing the district court entered findings of fact to the effect that all of the incidents of exposure with one exception were proved; that defendant was sane and responsible for his conduct although a sexual deviate dangerous to himself and others. The district court concluded as a matter of law that the deferred imposition of sentence and probation theretofore ordered should be revoked. An order of revocation was entered accordingly and defendant was sentenced to 15 years in the state prison on the original charge.

Two issues are assigned for review upon this appeal: (1) Did the district court abuse its discretion in permitting the children to testify after violation of its exclusionary order? (2) Did the district court abuse its discretion in revoking the deferred imposition of sentence and probation?

Defendant argues that once the children looked through the glass in the courtroom door and identified him by the comments of some of the children, there was not much he could do to prove his innocence. He contends that because the testimony of all the children was thus affected and because of in-court identification of defendant by means of the judge requiring him to stand and turn sideways, his substantial rights were prejudiced.

We do not agree with this contention. In the first place, the record discloses that the testimony of one of the children

could not have been "tainted" because she was not present at the time the children were looking through the glass window in the courtroom door and commenting on the identity of defendant. There was no violation of the exclusionary order by this witness at all.

Secondly and equally as important, the testimony of the children is admissible under the circumstances disclosed here even assuming they violated the exclusionary order. Here the children were quite young, no intention to violate the exclusionary order was shown and there was no connivance, knowledge or participation in the violation by the prosecution. It is apparent that the children peeked through the glass window in the courtroom door out of curiosity, lack of understanding of the exclusionary order and its purpose, and because no one had told them to stay away from the door.

Under these circumstances refusal of the trial court to exclude the children's material and relevant testimony concerning the incidents and defendant's participation in them did not constitute an abuse of discretion. This Court has previously stated "where the party is without fault and the witness disobeys the order for exclusion, the party ought not to be deprived of the testimony of the witness." State v. Johnson 62 Mont. 503, 205 P. 661. See also State v. McDonald, 51 Mont. 1, 149 P. 279; Thompson v. Yellowstone Livestock, 133 Mont. 403, 324 P.2d 412. Unintentional or accidental violations of exclusionary orders cannot be seized upon to exclude relevant and material testimony.

█ We must keep in mind that the hearing here involved is not before a jury, but before a veteran, experienced district judge who was mindful of the necessity for positive identification of the defendant. Judge Nelson entered the exclusionary order on his own initiative in his concern about identification by young children. That they may have unintentionally violated this order through lack of understanding and without connivance or collusion by the state furnishes no basis for

excluding their testimony. Under these circumstances no abuse of discretion by the trial court in permitting them to testify occurred.

The second issue submitted for review is whether the district court abused its discretion in revoking the deferred sentence and probation. In substance, this simply involves the sufficiency of the evidence to support the district court's findings, conclusion and order. If the evidence is sufficient, the district court cannot be held to have acted arbitrarily or capriciously.

We have no hesitation in holding that there is substantial credible evidence sustaining the district court's findings, conclusion and order. While there is a degree of conflict in the evidence, the district judge as trier of the facts resolved such conflicts by his findings. He simply chose to believe the state's witnesses in preference to defendant's witnesses. This the district judge had every right to do, the credibility of witnesses and the weight to be given their testimony reposing in him as trier of the facts.

In the instant case positive identification of the defendant was made by most of the children from photographs prior to the hearing. This was followed by in-court identification of defendant in person. Although peeking through the glass window in the courtroom door and the children's conversation concerning the identity of the defendant occurred, at most this goes to the credibility of the children as witnesses and the weight to be given their testimony. The testimony of the one child whose in-court identification was not "tainted", standing alone, was sufficient to support the order of revocation.

The children's testimony concerning surrounding events lends credence to their testimony concerning the exposures and defendant's identification * * * defendant was driving a small, blue car; he enticed the children to the car by asking questions about a lost dog; and then he exposed himself to them from inside the car. The children's description of the

exposures and their identification of defendant were more than adequate.

The court's findings concerning the mental condition of defendant are all based on examination of defendant at the Warm Springs State Hospital. They are neither attacked nor subject to attack.

The sentence of 15 years with credit for time already served in jail is well within the statutory maximum of 25 years.

Finding no error, the order of the district court is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON, MR. JUSTICES CASTLES and JOHN C. HARRISON, and the HONORABLE THOMAS DIGNAN, District Judge sitting in place of Mr. JUSTICE BONNER, concur.