MR. JUSTICE SHEEHY
delivered the opinion of the Court.
Defendant Wells was convicted in the District Court, Eighth District, Cascade County, of aggravated assault, aggravated burglary, and attempted sexual intercourse without consent. This appeal follows.
In the early morning hours of August 18, 1981, Terry W., the twelve year old victim of Wells’ attack, was asleep in the bedroom off the living room of her grandparent’s home in Great Falls. Her grandfather, the only other person in the house at the time, was asleep in a downstairs bedroom.
At approximately 2:30 a.m., Terry was awakened from a light sleep when the defendant pulled the covers off her body. As she rolled over to look at the intruder, Wells grabbed her neck and choked her with his left hand as he held a knife in front of her face with his right hand.
The defendant let loose and Terry scooted to the end of the bed. She asked what he wanted and he answered, “I want you.” Terry started to run but the defendant grabbed *342 her and hit her on the back of the head with a knife handle. She blacked out and fell. When Terry regained consciousness, she was lying on her stomach on the bed. Defendant stabbed her six times in the back and then attempted to rape her. At that point the old kitchen floor suddenly squeaked, startling defendant and apparently scaring him off.
Terry immediately went downstairs and awakened her grandfather. He laid her on the bed and called the emergency number for the police and ambulance. As they waited for the ambulance, Terry and her grandfather heard footsteps upstairs. The police and ambulance arrived and Terry was placed on a stretcher. Terry’s grandfather directed the stretcher out through the back door, a more convenient route to the ambulance. The grandfather then went to the front porch where he found defendant standing.
As the police came to the front of the house with the stretcher, they saw defendant leaving the porch, called to him, and questioned him. Defendant was covered with blood. When asked about it, he told officers that he had been in a fight in Helena and had just returned to Great Falls by bus. Since the blood was still wet and glistening and since defendant had no cuts or other wounds, he was taken into custody. Defendant later told officers that he had been at home, about a block away, had noticed the commotion and had just come to see what was happening.
Wells was charged by information on August 24, 1981. On December 11, 1981, the State moved to amend the information. The District Court granted that motion, defendant was arraigned on the amended information, and on December 18, 1981, he entered his pleas of not guilty to each count. At that time, defendant moved to assert an alibi defense. The District Court denied that motion and jury trial began on December 21, 1981. The jury found Wells guilty of aggravated assault, aggravated burglary, and attempted sexual intercourse without consent.
Wells presents this Court with five issues on appeal:
*343 1. Whether defendant should have been allowed to assert an alibi defense within ten days after entering his plea of not guilty to the amended information, pursuant to section 46-15-301(2), MCA;
2. Whether defendant was prejudiced by the State’s failure to sequester one witness;
3. Whether comment by a witness that defendant had been in the State penitentiary constituted reversible error;
4. Whether conviction of both aggravated burglary and aggravated assault violates constitutional and statutory provisions against double jeopardy and multiple punishment; and,
5. Whether the State’s exhibits A, B, D, E, F, and G were properly authenticated and identified.
I. Alibi Defense
Defendant argues that he should have been allowed to assert the alibi defense for two reasons. First, he contends that good cause was shown and that assertion of the defense would not have surprised the State. Second, he contends that an amended information is the filing of a new instrument that supersedes its predecessor. It, therefore, requires a new arraignment and gives defendant a statutory right to assert the defenses of alibi, self-defense, or inability to form the requisite mental state within ten days of the new arraignment. Finally, he contends that the State should not have been able to add two witnesses after the denial of the alibi defense.
Section 46-15-301(2), MCA, provides that a defendant must assert the defense of alibi within ten days after arraignment for the purpose of notice only and to prevent surprise. This statute also allows the defense to be asserted at “such later time as the court may for good cause permit.”
Defendant contends that good cause was shown to allow him to assert the alibi defense. Defense counsel argued that he did not become aware that the defense was available until December 17, 1981. This was some four months after the *344 crimes had been committed. The alibi that defendant proposed to assert was the testimony of his mother and a friend that he had been with them during the 35 minute period in question. Defense counsel maintained that he had been unable to contact them earlier to establish a possible alibi. Further, he maintained that the defendant had been unable to provide any information that supported an alibi defense since Wells claimed he was so intoxicated the night of the crime that he could not remember where he had been at any given time.
This Court has recognized that the only purpose of section 46-15-301, MCA, is to prevent surprise and to provide adequate notice of the alibi defense. State ex rel. Sikora v. District Court (1969), 154 Mont. 241, 250, 462 P.2d 897, 902. A defendant may upon a showing of good cause assert his defense of alibi later than the ten day period imposed by statute. Even during trial a fact situation may be developed to which an alibi defense may be pertinent or material. Witsoe v. Nelson (1974), 164 Mont. 511, 512, 524 P.2d 1111. If such good cause is demonstrated, but the State will be surprised if the alibi defense is allowed, the appropriate remedy would be to grant the prosecution a recess or a delay in the proceedings. State ex rel. Sikora, supra, 154 Mont. at 251, 462 P.2d at 902.
The standard this Court has applied in determining whether good cause is shown is whether “substantial reason that affords a legal excuse” exists for the delay in asserting an alibi defense. State v. Rozzell (1971), 157 Mont. 443, 450, 486 P.2d 877, 881. Other courts have also considered the substance of the proposed alibi. State v. Martin (1966), 2 Ariz.App. 510, 410 P.2d 132, 137.
Alibi defenses have been denied where the alibi would have been provided by family members or friends and it was not shown that it was not possible to contact them within the period allowed by statute. United States v. Smith (D.C.Cir.1975), 524 F.2d 1288. This Court has upheld denial of testimony by the defendant’s mother as to
*345 his whereabouts during the crime where defendant attempted to have her testify without notice and without a showing of good cause for delay. State v. Johnson (1978), 179 Mont. 61, 66-67, 585 P.2d 1328, 1331.
The alibi defense is one readily fabricated. It should therefore be received with caution and the State should have an opportunity to carefully investigate the defense. State v. Martin, supra, 410 P.2d at 136; State v. Davis (1981), 63 Hawaii 191, 624 P.2d 376, 379; Reese v. State (1979), 95 Nev. 419, 596 P.2d 212, 216. Strict enforcement of the notice statute will reduce the chance that surprise or maneuver, rather than the truth, will determine the outcome of the trial. State v. Davis, supra, 624 P.2d at 379. It is for these public policy reasons that pretrial discovery and investigation of the alibi defense are necessary. State ex rel. Sikora v. District Court, supra, 154 Mont. at 246, 247, 462 P.2d at 900.
The District Court did not abuse its discretion in denying defendant’s request to assert the alibi defense for good cause. State v. Johnson, supra, 179 Mont. at 67, 585 P.2d at 1331. State v. Babella (1978), 177 Mont. 275, 279, 581 P.2d 838, 841. The record does not support defendant’s contention that good cause was shown. No explanation was provided for defendant’s inability to locate his mother and friend in order to establish the defense. Defendant was specifically reminded of his right to assert the defense at his August arraignment and was asked at the omnibus hearing in late November whether he intended to assert it. The alibi would have had to cover a specific 35 minute period from 2:00 a.m. to approximately 2:35 a.m. Finally, the defendant’s alibi would have been provided by a relative and a friend.
Defendant’s second argument is that the amended information is a new document that requires a separate arraignment. Defendant therefore has a statutory right to assert the defense of alibi within ten days of the later arraignment. We agree.
*346 Here, the State moved to amend the information within two weeks of trial. That amendment required another arraignment. During the second arraignment defendant was informed, as he had been at the first, that he was entitled to assert an alibi defense within ten days. Two days later, he attempted to do so and was then denied that right. The District Court erred in denying that statutory right.
In the instant case, this does not amount to prejudicial error. The amendments to the information were minor and the charges as amended were founded on the facts set forth in the original affidavits and information. Defendant was not surprised or prejudiced by the amendment. He had specifically been reminded of his right to assert the alibi defense at the first arraignment and was asked if he intended to do so at the omnibus hearing. He informed the court on both occasions that he would not use it.
Finally, under the facts of the case it is apparent that the purported alibi defense was frivolous as a matter of law. Defendant was positively identified by the victim from a photo lineup based upon her description of the assailant. He was found outside the residence where the crime had occurred within minutes of the attack. He was covered with wet blood later identified as the victim’s. He told one officer that the blood was from a bar fight that had taken place in Helena and that he had just arrived in Great Falls by bus. He told another officer that he had been at home, a block away, during the crime. He commented to the jailer that “when the blood was matched,” he would be going away for a long time. Denial of the alibi defense was not prejudicial error.
Nor did the District Court err in allowing the State to add two witnesses only one working day before trial when it had denied defendant’s alibi defense. The witnesses were added to testify to a comment made by defendant after the arraignment at which the assertion of the alibi defense was denied.
The State demonstrated good cause for adding the *347 witnesses. It would have been impossible to notify defendant of the potential witnesses any earlier. Only one of the witnesses testified and he was the last witness for the State’s two day case. Defendant had ample opportunity to interview him prior to the short amount of testimony he gave. The witness’ entire statement was only three pages long. See State v. McKenzie (1980), Mont., 608 P.2d 428, 441-442, 37 St.Rep. 325 335-336; cert. den. 449 U.S. 1050, 101 S.Ct. 626, 66 L.Ed.2d 507. Defendant has failed to demonstrate prejudice. The addition of unnamed witnesses is within the District Court’s discretion, section 46-15-301(1), MCA, and will not be set aside absent a showing of a clear abuse of that discretion. State v. Booke (1978), 178 Mont. 225, 232, 583 P.2d 405, 409. No abuse has been shown.
II. Sequestered Witness
Defendant’s second argument is that he was prejudiced by the State’s failure to exclude one witness from the hearing room while the trial was in progress. All witnesses had been put under the rule of exclusion. One witness, a physician, was not aware of the court’s order. He inadvertently came into the courtroom and sat down a few minutes before he was to testify. Defendant immediately brought it to the District Court’s attention that the doctor had apparently been in the courtroom in disregard of the exclusion order.
It does not appear from the record that the doctor was aware of the restriction. Nor were the prosecutors aware of his presence. Finally, the testimony of the previous witness related to the procedure used in taking and storing blood samples. The physician’s testimony went to the victim’s injuries.
This Court has held that where no prejudice is shown, it is not error to admit the testimony of an unsequestered witness. State v. Radi (1978), 176 Mont. 451, 460-461, 578 P.2d 1169, 1176. State v. Love (1968), 151 Mont. 190, 195, 440 P.2d 275, 278. A party should not be denied his witness *348 because of misconduct which the party has not caused. State v. Johnson (1922), 62 Mont. 503, 510, 205 P. 661, 663.
“Refusal to permit a witness to testify in a criminal case on the ground that he had violated the order excluding witnesses is reversible error where neither the State nor the defendant was responsible for the violation of the order and did not know he was present.” (Citation omitted.) State v. Johnson, 62 Mont. at 511, 205 P. at 663.
Excluding testimony is not an appropriate remedy. Rather, the jury should be instructed on the credibility of the witness. If the order is willfully violated, the court may properly hold the witness in contempt of court. Johnson, 62 Mont. at 512, 205 P.2d at 663.
In the case before this Court, the witness was unaware of the order. Neither the State nor the defendant noted his presence until he had been in the courtroom for several minutes. The testimony he heard was totally unrelated to that which he was giving. Defendant has failed to demonstrate prejudice.
III. Evidence of Other Crimes
Defendant next argues that a mistrial should have been granted when a witness made reference to the fact that defendant had been in the state penitentiary. He contends that this statement so tainted the jury with regard to the defendant’s character that he was denied a fair trial.
The Montana Rules of Evidence, Rule 404(b), prohibits admission of evidence of other crimes, wrongs, or acts in order to prove the character of the defendant and to show that he was acting in conformity with that character. Such evidence is admissible for other purposes, such as establishing motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Rule 403 excludes otherwise relevant evidence if its probative value is outweighed by the danger of prejudice. Rule 403, Mont.R.Evid. This Court established a four-pronged test based upon the above two rules of evidence. The test is to *349 be applied to determine whether evidence of other crimes may be admitted. The four factors are:
“(1) similarity of crimes or acts;
“(2) nearness in time;
“(3) tendency to establish a common scheme, plan or system; and
“(4) the probative value of the evidence is not substantially outweighed by the prejudice to the defendant.” State v. Just (1979), Mont., 602 P.2d 957, 961, 36 St.Rep. 1649, 1653. See also State v. Case (1980), Mont., 621 P.2d 1066, 1070-1071, 37 St.Rep. 2057, 2062.
The basis for this rule is that a defendant is entitled to be informed of the offense charged so that he may prepare a defense only to that particular offense. State v. LaVe (1977), 174 Mont. 401, 406, 571 P.2d 97, 100. He should not be subjected to surprise.
In this instance, a detective called by the State was questioned concerning a conversation he had with defendant. When asked what the defendant said to him, the detective replied:
“He began to talk to me, and I asked him if he was aware of his rights, and he stated that he had been in the State penitentiary and he was well aware of his rights.”
The statement that defendant had been in the State penitentiary was not responsive to the question posed by the prosecutor.
When the statement was made at trial here, defendant objected and asked that it be stricken from the record. The objection was sustained. Defendant then, during a hearing in chambers, moved for a mistrial. That motion was denied and the court later gave the jury a general instruction to ignore evidence that was rejected or stricken, to not speculate on objections or what answers might have been, and to not assume insinuations suggested by a question to be true.
In a criminal case, if prejudice is alleged, it will not be presumed but must be established from the record that a substantial right was denied. State v. Dupre (1982), *350 200 Mont. 165, 650 P.2d 1381, 1386, 39 St.Rep. 1660, 1666. See also section 46-20-701, MCA. The test that this Court has adopted in determining whether the prejudicial error requires a reversal is whether there is a reasonable possibility that the inadmissible evidence might have contributed to the conviction. State v. LaVe, supra, 174 Mont. at 407, 571 P.2d at 101; See also Chapman v. California (1967), 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 710; Kotteakos v. United States (1946), 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557, 1566-1567.
Defendant has not demonstrated that the detective’s comment denied a substantial right. Nor has he shown that the one reference that he was “in the State penitentiary” might have contributed to his conviction in the instant case in the face of the overwhelming evidence introduced that directly proved defendant guilty of the offenses charged. This argument fails.
IV. Double Jeopardy/Multiple Convictions
Defendant next contends that constitutional and statutory provisions against double jeopardy were violated when he was convicted of both aggravated burglary and aggravated assault. He argues, first, that under the facts of this case the aggravated assault charge was completely merged with the aggravated burglary, and, second, that one fact — the use of a knife — provided the aggravating circumstance raising both the burglary to aggravated burglary and the assault to aggravated assault. These contentions fail.
The double jeopardy prohibition contained in the Fifth Amendment to the United States Constitution has been applied to state proceedings since 1969. Benton v. Maryland (1969), 395 U.S. 784, 796, 89 S.Ct. 2056, 2063, 23 L.Ed.2d 707, 717. This prohibition protects a defendant from both multiple prosecutions for offenses arising out of the same transaction and from multiple punishments imposed at a single prosecution for the same offense. See North Carolina v. Pearce (1969), 395 U.S. 711, 717, 89 S.Ct. *351 2072, 2076, 23 L.Ed.2d 656, 664-665. Where, as here, defendant was tried at a single prosecution for all of the statutory crimes in question, the issue is one of multiple punishments. State v. Close (1981), Mont., 623 P.2d 940, 949, 38 St.Rep. 177, 188.
The analysis that this Court has consistently applied in determining whether one offense is included within another offense is the test set forth in Blockburger v. United States (1932), 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309. In Blockburger, the Court ruled:
“The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.” 284 U.S. at 304, 52 S.Ct. at 182, 76 L.Ed.at 309.
The Blockburger test is codified in section 46-11-502, MCA.
This Court has adopted the approach whereby the analysis is applied to the statutes in question rather than to the facts of the individual case. State v. Ritchson (1981), Mont., 630 P.2d 234, 237, 38 St.Rep. 1015, 1018. In determining whether multiple punishments should be allowed for offenses arising out of the same transaction, the dispositive question then becomes whether the legislature intended to provide for multiple punishments. State v. Close (1981), supra, 623 P.2d at 949, 38 St.Rep. at 188. “Block-burger’s analysis must stand or fall on the working of the statutes alone, not on the indictment.” Close, 623 P.2d at 950, 38 St.Rep. at 189. See also, State v. Buckman (1981), Mont., 630 P.2d 743, 745, 38 St.Rep. 1007, 1009; State v. Coleman (1979), Mont., 605 P.2d 1000, 1008-1009, 36 St.Rep. 1134, 1138-1140A; State v. Perry (1979), 180 Mont. 364, 368, 590 P.2d 1129, 1131; State v. Davis & Close (1978), 176 Mont. 196, 199, 577 P.2d 375, 377; State v. Radi, supra, 176 Mont. at 462, 578 P.2d at 1176.
There are several bases for concluding that the legislature intended to permit punishment for both aggravated bur *352 glary and the related felony of aggravated assault.
First, in applying the Blockburger analysis to the statutes involved, we do not conclude that the offense of aggravated assault is the same offense as aggravated burglary. It is clear that one can commit aggravated burglary without committing aggravated assault and that one can commit aggravated assault without committing aggravated burglary.
Second, Montana case law interpreting the State’s burglary statutes has consistently distinguished the crime of burglary from any other offense that the burglar intends to commit and has allowed prosecution for both. The essential elements of burglary have always been the wrongful presence of the burglar with an intent to commit another offense. It is not necessary to demonstrate that the related offense was in fact committed where the intent to commit it is shown. This Court has always observed that difference:
“As early as Territory v. Willard, 8 Mont. 328, 331, 332, 21 P. 301, 302, this Court noted the distinctions between burglary and larceny, stating: ‘It is plain from the definitions that they [burglary and larceny] are two distinct crimes, and the larceny is not necessarily included in the burglary. In order to sustain the indictment for burglary it would only be essential to prove the felonious entry with the intent, while to convict on the charge of larceny, it becomes necessary to show the taking, for the entry may have been without any felonious intent. Burglary, on the other hand, may, as it frequently does, exist without actual theft, and larceny may be committed without burglary. Therefore, in making out the case of larceny, the prosecution need not have shown any burglarious intent or entering; it became only necessary to prove the usual elements of theft, — that is, the venue, the identity of the accused, the felonious taking, the intent to convert to the taker’s use, the property stolen, its value, the ownership, and that the offense occurred within the time limited for such prosecutions * * *.’ The various decisions of this Court since the Willard case, supra, have not materially departed from this explanation *353 of the two crimes.” Morigeau v. State of Montana & Ed Ellsworth (1967), 149 Mont. 85, 89, 423 P.2d 60, 62.
Since burglary is based upon the wrongful entry or remaining with the requisite intent to commit an offense, the burglary occurs at the time of unlawful entrance upon the premises. State v. Solis (1973), 163 Mont. 293, 295, 516 P.2d 1157, 1158. See also State v. Harris (1972), 159 Mont. 425, 430, 498 P.2d 1222, 1225; State v. Moran (1963), 142 Mont. 423, 384 P.2d 777. The intent and the entry are determinative.
“. . .In Perkins on Criminal Law, p. 166 (1957), the author states:
“ ‘Larceny is usually the purpose for which burglary is committed but it is not essential to guilt that the intruder succeed in carrying out the intent with which the house was broken into, nor that it should be for the purpose of stealing. There is no common-law burglary, however, unless the intrusion is perpetrated with an intent to commit some felony. Thus if a rogue breaks into the dwelling of another at night with intent to commit murder he is guilty of burglary even if he leaves without finding his intended victim and without having committed any felony in the house. On the other hand he would not be guilty of burglary if he broke in for the purpose of trespass only even if he subsequently did commit some felony during his wrongful visit.’ ” State v. Austad (1975), 166 Mont. 425, 428, 533 P.2d 1069, 1070.
The third basis for finding that the legislature intended multiple punishments is its adoption of the Montana Criminal Code of 1973 and its subsequent amendment of the burglary statutes. The 1975 revision added “unlawfully” after the requirement that a burglar “knowingly enters or remains. . .” This change reflects a clear intention to return to the common law view that “the gravamen of burglary was the threat to person resulting from the wrongful intrusion” into someone’s occupied structure. Annotations, section 45-6-204, MCA, at 200. State v. Shannon (1976), 171 Mont. 25, 27, 554 P.2d 743, 744.
*354 By contrast, the crime of aggravated assault deals with the more serious forms of assault. The crime of battery is merged with the assault provision and in all but subsection (l)(c) of the aggravated assault statute an actual physical contact or battery is required. Subsection (l)(c) requires reasonable apprehension of serious bodily injury caused by use of a weapon. Annotation, section 45-5-202, MCA, at 146.
The focus of the aggravated assault statute is on the victim and the actual injury to him or his reasonable apprehension of serious bodily injury caused by use of a weapon. While the crux of the burglary statute is to prevent the threat to a person resulting from the unlawful intrusion into his property, it is not necessary that a burglary victim be harmed in any way or that the victim even be aware of the threat to his person from the unlawful intrusion.
The legislature unmistakably intended multiple punishments for the offenses of aggravated burglary and aggravated assault. If a person enters or remains unlawfully in an occupied structure with the intent to commit an aggravated assault, he has committed a burglary. If he then commits the aggravated assault, he may be convicted of it and sentenced for it in addition to conviction and sentencing for the burglary.
Defendant’s second argument, that he was placed in double jeopardy since the use of a knife was the one aggravating circumstance raising both crimes to the aggravated level, is without merit. Again, the Blockburger analysis as applied to the statutes will not result in a finding of double jeopardy. In addition, under the facts of the instant case there is still no possibility that the use of the knife raised both crimes to the aggravated level.
Defendant was charged with aggravated assault under subsection (l)(b) of 45-5-202, MCA. The jury was instructed to find him guilty of aggravated assault if it found that he had purposely or knowingly caused bodily injury to the victim with a weapon. The factor raising the crime from simple *355 assault (purposely or knowingly causing bodily injury to another) to aggravated assault was the use of a weapon — the knife.
The aggravating factors raising the burglary to aggravated burglary were two-fold. The elements of simple burglary are that a person enter or remain unlawfully in an occupied structure with the purpose to commit an offense therein. Aggravated burglary requires (1) the defendant’s intent that the offense be a felony and, (2) that in effecting entry, committing the offense or in flight thereafter, the defendant purposely, knowingly, or negligently inflicts or attempts to inflict bodily injury upon another. Section 45-6-204(2) (b), MCA. Here, the jury was instructed that in order to find defendant guilty of aggravated burglary, it would have to find: that he entered or remained unlawfully in the occupied structure, with the purpose to commit aggravated assault, and that in the course of committing the offense he purposely, knowingly, or negligently inflicted bodily injury upon anyone.
The aggravating factor for assault was use of the weapon. The aggravating factors for the burglary were that the offense was a felony and that defendant purposely, knowingly, or negligently inflicted bodily injury upon anyone. There was ample evidence presented to the jury to support conviction for aggravated assault (bodily injury with the knife) and a conviction for aggravated burglary (an intent to commit aggravated assault and bodily injury resulting from choking the victim or hitting her on the head). The jury instructions given on aggravated burglary allowed an independent conviction for the burglary without a conviction for aggravated assault. The jury could have convicted defendant of aggravated burglary if it found that the State proved intent to commit the felony (aggravated assault). The jury could have found the related aggravated assault if it found that defendant placed the victim in serious apprehension of bodily injury with a weapon by holding a knife in front of her face. Finally, the jury could have found that *356 defendant committed the underlying aggravated assault by inflicting serious bodily injury upon the victim. The attending physicians testified that Terry received life threatening wounds. Defendant was not placed in double jeopardy.
V. Chain of Custody
Defendant challenges the chain of custody of exhibits “A”, “B”, “D”, and “E” and contends that testimony as to those exhibits and exhibits “F” and “G” should have been stricken. He asserts that the chain of custody was not foolproof and that the evidence was therefore inadmissible.
It is not necessary for the State to prove that it would be impossible to tamper with the exhibits. State v. Nelson(1978), 178 Mont. 280, 288, 583 P.2d 435, 439; State v. Fitzpatrick (1973), 163 Mont. 220, 230, 516 P.2d 605, 611-612. Rather, the State need only make a prima facie showing that there has been no substantial change in the evidence. State v. WongFong (1925), 75 Mont. 81, 87, 241 P. 1072, 1074. After such a showing, the burden of proof shifts to the defendant to show why the evidence should not be admitted. State v. Armstrong (1980), Mont., 616 P.2d 341, 355, 37 St.Rep. 1563, 1579. Adequacy of the foundation for the admission of evidence is within the discretion of the District Court and its determination of adequacy will not be overturned absent a clear abuse of discretion. State v. Thomas (1975), 166 Mont. 265, 268-269, 532 P.2d 405, 407.
Exhibits “A”, “B”, “D” and “E” were properly admitted. Each exhibit (corduroy pants, a t-shirt, a sheet, and a pillowcase) were identified by three or four police officers. The items were each described in detail and identified by color, by particular patterns of blood spots, and by designs. In each instance, the officers testified that the items were in substantially the same condition as on the night of the crime. Extensive testimony described the labeling, storing, and testing procedures used for each item. Defendant has raised no possibility of actual tampering. The exhibits were *357 properly admitted.
Defendant also argues that testimony in reference to exhibits “F” and “G” should be stricken from the record. These exhibits were vials of blood taken from the victim and from defendant for use in blood typing tests run on other exhibits. Extensive testimony was presented that chronicled the chain of custody from the taking of the samples, storage and delivery to the State Crime Laboratory in Missoula; storage and testing there; their return to Great Falls; and storage until trial. Expert testimony on the results and conclusions of the blood tests was also given. It established that the blood covering defendant when he was apprehended was that of the victim.
At no point during trial did defendant object to this testimony. He may not now on appeal raise this issue for the first time. State v. Campbell (1981), Mont., 622 P.2d 200, 202, 38 St.Rep. 19, 22. The testimony was properly allowed. The exhibits were properly admitted.
Affirmed.
MR. CHIEF JUSTICE HASWELL and JUSTICES DALY, HARRISON, MORRISON and WEBER concur.