No. 12228

IN THE SUPREME COURT OF THE STATE OF MONTANA

1972

---

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

PHILLIP HARRIS,

Defendant and Appellant.

---

Appeal from: District Court of the Sixteenth Judicial District, Honorable Alfred B. Coate, Judge presiding.

Counsel of Record:

For Appellant:

Evalyn B. Carson argued, Billings, Montana.

For Respondent:

William J. Krutzfeldt argued, Miles City, Montana.
Robert Woodahl, Attorney General, Helena, Montana.
J. C. Weingartner, Assistant Attorney General, argued, Helena, Montana.

---

Submitted: May 18, 1972

Decided: JUL 7 - 1972

Filed: JUL 7 - 1972

*Thomas J. Kearney*
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Defendant, Phillip Harris, was convicted of burglary in the first degree in the district court of the sixteenth judicial district, county of Custer, and sentenced to fourteen years, with four years suspended, in the Montana state prison. From this judgment, defendant appeals.

During the fall months of 1970, a codefendant of Harris, one Leon Meidinger, began frequenting Kelly's Gaslite, a bar in Miles City. Working at the bar was Lila Williamson, an acquaintance of Meidinger. Meidinger expressed an interest in where the owner of the bar, Earl Kelly, kept his money. At the trial Meidinger testified that he had played in a poker game in the basement of Kelly's Gaslite and was aware that considerable cash was involved in the game. In November 1970, Meidinger pursuaded Lila Williamson to obtain a duplicate of her key to the bar and his brother picked up the key for Meidinger.

On December 11, 1970, Lila Williamson contacted a local policeman, Larry Kuchynka, and told him that during the night of December 11 Kelly's Gaslite bar would be burglarized. Kuchynka notified Kelly, the owner, and then proceeded with local police and sheriff's deputies to stake out the bar.

Kelly, before closing the bar after 2 a.m., December 12, thoroughly checked the premises upstairs and down, and found no one in the premises. Knowing that he might be burglarized that night, he left the safe unlocked no doubt hoping to prevent wear and tear on the safe.

The information given policeman Kuchynka by Lila Williamson proved to be correct when about fifteen minutes after Kelly closed the Gaslite officers staked out across the street saw

defendant use a key to enter the bar. At trial Kuchynka gave the following description of what took place:

"A. We laid there for quite awhile, about 2:45 A.M. a male subject with brown colored coat was observed by himself and the - by myself, and the other two officers, walking west down Main Street. He got to the door of the Gaslight and he very abruptly turned into the door. It appeared he stuck a key or something in the door and pulled it open and stepped inside.

"Q. What did you next observe?

"A. About 3:00 A.M. we were laying there awaiting for him to come out. We saw the curtain in the door rustle back and forth and a head appeared looking out the door. At that time I called the other officers in to assist. He looked out the door. The door come flying open and you might say he jumped out in the middle of the street and turned east and just started walking as casually as anyone else."

Defendant's early morning walk was interrupted by seven law enforcement officers. When they frisked defendant they found a walkie-talkie and a bag full of checks and currency, tied with a cord around defendant's neck. At the time defendant was ordered to put up his hands the arresting officers heard what turned out to be the duplicate key to Kelly's Gaslite bar fall to the pavement.

Following the arrest and search of defendant, the officers went into the Gaslite bar, using defendant's key, and there they were not surprised to find the safe open and empty. They found the dial of the safe had been knocked off and alongside the safe was a hammer, so in spite of owner Kelly's precaution the safe was damaged.

Later, Kelly identified checks and currency which had been in the safe and which were removed from the bag found hanging around defendant's neck when he was apprehended.

As the officers came out of the bar following completion of their investigation there, one of them noted a camper pickup parked across the street cater-corner from the Gaslite bar.

The officers recognized the truck; it belonged to Leon Meidinger, a known personality to law enforcement officers in the area. When one officer flashed his flashlight into the truck, he discovered Meidinger crouched down in the truck. He was ordered to get out of the truck and to the officer's surprise a walkie-talkie similar in design and cover to that found on defendant, was in his possession.

The officer who recognized the camper pickup testified he had seen the pickup parked across the street from Kelly's Gaslite bar at approximately midnight, though both defendant and Meidinger alleged they did not arrive in Miles City until 2:30 a.m. The pickup had stolen license plates and both defendant and Meidinger admitted stealing the plates at Rosebud, Montana, en route to Miles City.

Both defendant and Meidinger were arrested and charged with burglary. Each posted bail of $3,750. While awaiting release on bail, they were in the sheriff's office talking to relatives. Both Sheriff Damm and Officer Adrian at that time heard Meidinger say to his brother "I should have known better to pull something like this in my home town."

Defendant's defense as to why he had entered the Gaslite bar after closing hours was that he wanted to see if there was a poker game in the basement of the bar, even though he had never played in the game. He failed to explain the walkie-talkie or the bag of checks and currency found tied around his neck.

On appeal defendant presents six issues for review:

1. Was there entrapment in this case as a matter of law?

2. Was there a "breaking" and entering and therefore a burglarious entry?

3. Was the defendant compelled to be a witness against himself in violation of his constitutional rights under the Fifth Amendment to the United States Constitution?

4. Was the defendant's right to privacy invaded in violation of the Fourth Amendment to the United States Constitution

which prohibits unreasonable search and seizure?

5. Was the punishment of fourteen years, with four years suspended, at hard labor, cruel and unusual punishment under the facts of this case?

6. Was the introduction of the parole officer's report at the presentence hearing a violation of the defendant's rights under the Sixth Amendment of the United States Constitution and Article III, Section 16, of the Montana Constitution?

We find no merit to defendant's first issue as to entrapment. Entrapment was not argued at the trial nor were instructions requested. State v. Parr, 129 Mont. 175, 283 P.2d 1086; State v. O'Donnell, 138 Mont. 123, 354 P.2d 1105. In this case there was no decoy, no solicitation, nor any inducement to defendant to commit the burglary.

This Court in a recent consideration of the plea of entrapment, State v. Karathanos, _____Mont._____, 493 P.2d 326, 331, 29 St.Rep. 81, had this to say:

> "Entrapment occurs only when the criminal intent or design originates in the mind of the police officer or informer and not with the accused, and the accused is lured or induced into committing a crime he had no intention of committing. Only when the criminal design originates, not with the accused, but in the mind of government officers and the accused is by persuasion, deceitful representations, or inducement, lured into the commission of a criminal act, can a case of entrapment be made out. In short, there is a controlling distinction between inducing a person to do an unlawful act and setting a trap to catch him in the execution of a criminal design of his own conception."

Here, defendant relied on alibi as a defense and the defense of entrapment cannot be heard for the first time on appeal. Sylvia v. United States, 312 F.2d 145.

Defendant's second issue questions whether or not his entrance into the bar constituted a "burglarious entry".

Section 94-901, R.C.M. 1947, reads:

"Every person who enters any house, room, apartment, tenement, shop, warehouse, store, mill, barn, stable, outhouse, or other building, tent, motor vehicle and aircraft, vessel, or railroad car, with intent to commit grand or petit larceny or any felony, is guilty of burglary."

All that is required as elements of the crime of burglary is an "entry" with the "intent" to commit a felony. State v. Richter, 152 Mont. 449, 451 P.2d 833. Here, defendant admitted entering Kelly's Gaslite bar after the hour of 2:30 a.m. and he was seen by the stake out officers so entering, therefore there is no question as to his entry.

There is ample evidence to show defendant's entry was illegal. He had never been in the bar before and he used a key obtained by his partner. He left behind a safe with the dial removed, a hammer and a punch. He was found with a walkie-talkie, identical to the one found on his partner. Finally, he had the currency sack hung around his neck. One cannot help but wonder what more proof could have been presented of a felonious intent. We find no merit in defendant's second issue.

In his third issue defendant questions the admission into evidence of the fruits of the crime found as the result of a valid search, in violation of his Fifth Amendment rights. His argument that admission into evidence of the contents of the bag, checks and currency, compelled defendant to be a witness against himself, is without merit.

In State v. Benson, 91 Mont. 21, 26, 5 P.2d 223, this Court commenting on the admission into evidence of shoes, a gun and shells found lying near defendant when he was arrested, said:

"The constitutional rights of those accused of crime are sufficiently safeguarded under our practice without stretching the search and seizure provision of our Constitution beyond recognition of its framers. The articles were not obtained by unlawful search and seizure (Const., Art. III, sec. 7), and their use on the trial of defendant did not compel him to become a witness against himself (Const., Art.

III, sec. 18). (Browne v. United States, (C.C.A.) 290 Fed. 870; Baron v. United States, (C.C.A.) 286 Fed. 822.)"

Also see: State v. Houchin, 149 Mont. 503, 428 P.2d 971; State v. Armstrong, 149 Mont. 470, 428 P.2d 611; State v. Callaghan, 144 Mont. 401, 396 P.2d 821. This has long been the rule recongized by the United States Supreme Court. Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L ed 652; Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L ed 1399.

Defendant's fourth issue relates to whether the search and seizure was a lawful incident of arrest. He seems to argue that once the officers had determined defendant had no weapon frisking should have been terminated. Had this occurred the searching officers would not have found the money bag, even though it was visible under his coat. Also, he seems to argue that pointing a machine gun at him made the search both unreasonable and illegal.

The rule on search incident to a lawful arrest has been stated many times---a search of the person incidental to a lawful arrest is valid. In Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L ed 2d 685, 694, the United States Supreme Court said:

> "When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape."

Concerning defendant's objection to the officers cutting the cord from his neck and taking the currency bag, all that need be said is that it was part of the "fruits of the crime" and the seizure was legal. Preston v. United States, 376 U.S. 364, 84 S.Ct.881, 11 L ed 2d 777. We find no merit in defendant's fourth issue.

Defendant's fifth issue alleges the length of the sentence given to be cruel and unusual punishment in violation of his rights under the Eighth Amendment to the United States Constitution. We considered such an argument in Karathanos and held:

> "It is the general rule that a sentence within the maximum authorized by statute is not cruel and unusual punishment. The Ninth Circuit Court of Appeals in Black v. United States, 269 F.2d 38, 43, affirmed a thirty year sentence on a narcotic charge. There appellant, then 51 years of age, argued that this amounted to life imprisonment. The maximum punishment in Montana for the crime which defendant was charged with, is life imprisonment. Black was denied certiorari by the United States Supreme Court. 361 U.S. 938, 80 S.Ct. 379, 4 L.Ed.2d 357.

> "In Black is language applicable to this case:

> "'The Eighth Amendment was adopted to prevent inhuman, barbarous or torturous punishment. It is possible for the length of a sentence to be so disproportionate to the offense as to fall within the inhibition. Hemans v. United States, 6 Cir., 163 F.2d 228, 237. Ordinarily, however, where the sentence imposed is within the limits prescribed by the statute for the offense committed, it will not be regarded as cruel and unusual. Edwards v. United States, 10 Cir., 206 F.2d 855. In our view the aggregate sentence imposed on Black is not so disproportionate to the offense committed as to offend the Eighth Amendment ban.'"

In Montana the penalty for first degree burglary is imprisonment for not less than one nor more than fifteen years. Section 94-903, R.C.M. 1947. Defendant was sentenced to fourteen years with four years suspended and thus the sentence comes within the maximum authorized. We reject defendant's fifth issue.

Defendant's final issue concerns alleged denial of his rights due to certain evidence being submitted at the presentence hearing. Section 95-2204, R.C.M. 1947, sets out the scope of inquiry regarding the presentencing report:

> "Whenever an investigation is required, the probation officer shall promptly inquire into the characteristics, circumstances, needs, and potentialities of the defendant; his criminal record and social history; the circumstances of the offense;

the time the defendant has been in detention; and the harm to the victim, his immediate family, and the community. All local and state mental and correctional institutions, courts, and police agencies shall furnish the probation officer on request the defendant's criminal record and other relevant information. The investigation shall include a physical and mental examination of the defendant when it is desirable in the opinion of the court."

Both defendant and his counsel were present at the presentence hearing held October 28, 1971, and counsel exercised extensive cross-examination of the witnesses. Defendant's activities submitted as a part of the report disclosed no prior convictions, but did show prior charges of statutory rape, armed robbery and second degree murder. All this was properly presented for the court's consideration under the above cited statute. We find no merit in defendant's final issue.

The judgment of the district court is affirmed.

_____
Associate Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Associate Justices.

- 9 -