No. 82-131

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

---

THE STATE OF MONTANA,

Plaintiff and Respondent,

vs.

GEORGE CLAYTON WELLS,

Defendant and Appellant.

---

Appeal from: District Court of the Eighth Judicial District,
In and for the County of Cascade
Honorable H. William Coder, Judge presiding.

Counsel of Record:

For Appellant:

Bauer and Kuether, Great Falls, Montana
Mark Bauer argued and Charles W. Kuether argued,
Great Falls, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
James McLean argued, Assistant Attorney General,
Helena, Montana
J. Fred Bourdeau, County Attorney, Great Falls, Montana
Thomas McKittrick argued, Deputy County Attorney,
Great Falls, Montana

---

Submitted: September 14, 1982

Decided: February 4, 1983

Filed: FEB 4 - 1983

Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Defendant Wells was convicted in the District Court, Eighth District, Cascade County, of aggravated assault, aggravated burglary, and attempted sexual intercourse without consent. This appeal follows.

In the early morning hours of August 18, 1981, Terry W., the twelve year old victim of Wells' attack, was asleep in the bedroom off the living room of her grandparent's home in Great Falls. Her grandfather, the only other person in the house at the time, was asleep in a downstairs bedroom.

At approximately 2:30 a.m., Terry was awakened from a light sleep when the defendant pulled the covers off her body. As she rolled over to look at the intruder, Wells grabbed her neck and choked her with his left hand as he held a knife in front of her face with his right hand.

The defendant let loose and Terry scooted to the end of the bed. She asked what he wanted and he answered, "I want you." Terry started to run but the defendant grabbed her and hit her on the back of the head with a knife handle. She blacked out and fell. When Terry regained consciousness, she was lying on her stomach on the bed. Defendant stabbed her six times in the back and then attempted to rape her. At that point the old kitchen floor suddenly squeaked, startling defendant and apparently scaring him off.

Terry immediately went downstairs and awakened her grandfather. He laid her on the bed and called the emergency number for the police and ambulance. As they waited for the ambulance, Terry and her grandfather heard footsteps upstairs. The police and ambulance arrived and Terry was placed on a stretcher. Terry's grandfather directed the stretcher out

through the back door, a more convenient route to the ambulance. The grandfather then went to the front porch where he found defendant standing.

As the police came to the front of the house with the stretcher, they saw defendant leaving the porch, called to him, and questioned him. Defendant was covered with blood. When asked about it, he told officers that he had been in a fight in Helena and had just returned to Great Falls by bus. Since the blood was still wet and glistening and since defendant had no cuts or other wounds, he was taken into custody. Defendant later told officers that he had been at home, about a block away, had noticed the commotion and had just come to see what was happening.

Wells was charged by information on August 24, 1981. On December 11, 1981, the State moved to amend the information. The District Court granted that motion, defendant was arraigned on the amended information, and on December 18, 1981, he entered his pleas of not guilty to each count. At that time, defendant moved to assert an alibi defense. The District Court denied that motion and jury trial began on December 21, 1981. The jury found Wells guilty of aggravated assault, aggravated burglary, and attempted sexual intercourse without consent.

Wells presents this Court with five issues on appeal:

1. Whether defendant should have been allowed to assert an alibi defense within ten days after entering his plea of not guilty to the amended information, pursuant to section 46-15-301(2), MCA;

2. Whether defendant was prejudiced by the State's failure to sequester one witness;

3. Whether comment by a witness that defendant had been in the State penitentiary constituted reversible error;

4. Whether conviction of both aggravated burglary and aggravated assault violates constitutional and statutory provisions against double jeopardy and multiple punishment; and,

5. Whether the State's exhibits A, B, D, E, F, and G were properly authenticated and identified.

## I. Alibi Defense

Defendant argues that he should have been allowed to assert the alibi defense for two reasons. First, he contends that good cause was shown and that assertion of the defense would not have surprised the State. Second, he contends that an amended information is the filing of a new instrument that supersedes its predecessor. It, therefore, requires a new arraignment and gives defendant a statutory right to assert the defenses of alibi, self-defense, or inability to form the requisite mental state within ten days of the new arraignment. Finally, he contends that the State should not have been able to add two witnesses after the denial of the alibi defense.

Section 46-15-301(2), MCA, provides that a defendant must assert the defense of alibi within ten days after arraignment for the purpose of notice only and to prevent surprise. This statute also allows the defense to be asserted at "such later time as the court may for good cause permit."

Defendant contends that good cause was shown to allow him to assert the alibi defense. Defense counsel argued that he did not become aware that the defense was available until December 17, 1981. This was some four months after the crimes had been committed. The alibi that defendant proposed to assert was the testimony of his mother and a friend that he had been with them during the 35 minute period in question.

-4-

Defense counsel maintained that he had been unable to contact them earlier to establish a possible alibi. Further, he maintained that the defendant had been unable to provide any information that supported an alibi defense since Wells claimed he was so intoxicated the night of the crime that he could not remember where he had been at any given time.

This Court has recognized that the only purpose of section 46-15-301, MCA, is to prevent surprise and to provide adequate notice of the alibi defense. State ex rel. Sikora v. District Court (1969), 154 Mont. 241, 250, 462 P.2d 897, 902. A defendant may upon a showing of good cause assert his defense of alibi later than the ten day period imposed by statute. Even during trial a fact situation may be developed to which an alibi defense may be pertinent or material. Witsoe v. Nelson (1974), 164 Mont. 511, 512, 524 P.2d 1111. If such good cause is demonstrated, but the State will be surprised if the alibi defense is allowed, the appropriate remedy would be to grant the prosecution a recess or a delay in the proceedings. State ex rel. Sikora, supra, 154 Mont. at 251, 462 P.2d at 902.

The standard this Court has applied in determining whether good cause is shown is whether "substantial reason that affords a legal excuse" exists for the delay in asserting an alibi defense. State v. Rozzell (1971), 157 Mont. 443, 450, 486 P.2d 877, 881. Other courts have also considered the substance of the proposed alibi. State v. Martin (1966), 2 Ariz. App. 510, 410 P.2d 132, 137.

Alibi defenses have been denied where the alibi would have been provided by family members or friends and it was not shown that it was not possible to contact them within the period allowed by statute. United States v. Smith (D.C.

Cir. 1975), 524 F.2d 1288. This Court has upheld denial of testimony by the defendant's mother as to his whereabouts during the crime where defendant attempted to have her testify without notice and without a showing of good cause for delay. State v. Johnson (1978), 179 Mont. 61, 66-67, 585 P.2d 1328, 1331.

The alibi defense is one readily fabricated. It should therefore be received with caution and the State should have an opportunity to carefully investigate the defense. State v. Martin, supra, 410 P.2d at 136; State v. Davis (1981), 63 Hawaii 191, 624 P.2d 376, 379; Reese v. State (1979), 95 Nev. 419, 596 P.2d 212, 216. Strict enforcement of the notice statute will reduce the chance that surprise or maneuver, rather than the truth, will determine the outcome of the trial. State v. Davis, supra, 624 P.2d at 379. It is for these public policy reasons that pretrial discovery and investigation of the alibi defense are necessary. State ex rel. Sikora v. District Court, supra, 154 Mont. at 246, 247, 462 P.2d at 900.

The District Court did not abuse its discretion in denying defendant's request to assert the alibi defense for good cause. State v. Johnson, supra, 179 Mont. at 67, 585 P.2d at 1331. State v. Babella (1978), 177 Mont. 275, 279, 581 P.2d 838, 841. The record does not support defendant's contention that good cause was shown. No explanation was provided for defendant's inability to locate his mother and friend in order to establish the defense. Defendant was specifically reminded of his right to assert the defense at his August arraignment and was asked at the omnibus hearing in late November whether he intended to assert it. The alibi would have had to cover a specific 35 minute period from 2:00 a.m. to approximately 2:35 a.m. Finally, the

-6-

defendant's alibi would have been provided by a relative and a friend.

Defendant's second argument is that the amended information is a new document that requires a separate arraignment. Defendant therefore has a statutory right to assert the defense of alibi within ten days of the later arraignment. We agree.

Here, the State moved to amend the information within two weeks of trial. That amendment required another arraignment. During the second arraignment defendant was informed, as he had been at the first, that he was entitled to assert an alibi defense within ten days. Two days later, he attempted to do so and was then denied that right. The District Court erred in denying that statutory right.

In the instant case, this does not amount to prejudicial error. The amendments to the information were minor and the charges as amended were founded on the facts set forth in the original affidavits and information. Defendant was not surprised or prejudiced by the amendment. He had specifically been reminded of his right to assert the alibi defense at the first arraignment and was asked if he intended to do so at the omnibus hearing. He informed the court on both occasions that he would not use it.

Finally, under the facts of the case it is apparent that the purported alibi defense was frivolous as a matter of law. Defendant was positively identified by the victim from a photo lineup based upon her description of the assailant. He was found outside the residence where the crime had occurred within minutes of the attack. He was covered with wet blood later identified as the victim's. He told one officer that the blood was from a bar fight that had taken

-7-

place in Helena and that he had just arrived in Great Falls by bus. He told another officer that he had been at home, a block away, during the crime. He commented to the jailer that "when the blood was matched," he would be going away for a long time. Denial of the alibi defense was not prejudicial error.

Nor did the District Court err in allowing the State to add two witnesses only one working day before trial when it had denied defendant's alibi defense. The witnesses were added to testify to a comment made by defendant after the arraignment at which the assertion of the alibi defense was denied.

The State demonstrated good cause for adding the witnesses. It would have been impossible to notify defendant of the potential witnesses any earlier. Only one of the witnesses testified and he was the last witness for the State's two day case. Defendant had ample opportunity to interview him prior to the short amount of testimony he gave. The witness' entire statement was only three pages long. See State v. McKenzie (1980), ___ Mont. ___, 608 P.2d 428, 441-442, 37 St.Rep. 325, 335-336; cert.den. 449 U.S. 1050, 101 S.Ct. 626, 66 L.Ed.2d 507. Defendant has failed to demonstrate prejudice. The addition of unnamed witnesses is within the District Court's discretion, section 46-15-301(1), MCA, and will not be set aside absent a showing of a clear abuse of that discretion. State v. Booke (1978), 178 Mont. 225, 232, 583 P.2d 405, 409. No abuse has been shown.

### II. Sequestered Witness

Defendant's second argument is that he was prejudiced by the State's failure to exclude one witness from the hearing room while the trial was in progress. All witnesses had been

put under the rule of exclusion. One witness, a physician, was not aware of the court's order. He inadvertently came into the courtroom and sat down a few minutes before he was to testify. Defendant immediately brought it to the District Court's attention that the doctor had apparently been in the courtroom in disregard of the exclusion order.

It does not appear from the record that the doctor was aware of the restriction. Nor were the prosecutors aware of his presence. Finally, the testimony of the previous witness related to the procedure used in taking and storing blood samples. The physician's testimony went to the victim's injuries.

This Court has held that where no prejudice is shown, it is not error to admit the testimony of an unsequestered witness. State v. Radi (1978), 176 Mont. 451, 460-461, 578 P.2d 1169, 1176. State v. Love (1968), 151 Mont. 190, 195, 440 P.2d 275, 278. A party should not be denied his witness because of misconduct which the party has not caused. State v. Johnson (1922), 62 Mont. 503, 510, 205 P. 661, 663.

> "Refusal to permit a witness to testify in a criminal case on the ground that he had violated the order excluding witnesses is reversible error where neither the state nor the defendant was responsible for the violation of the order and did not know he was present." (Citation omitted.) State v. Johnson, 62 Mont. at 511, 205 P. at 663.

Excluding testimony is not an appropriate remedy. Rather, the jury should be instructed on the credibility of the witness. If the order is willfully violated, the court may properly hold the witness in contempt of court. Johnson, 62 Mont. at 512, 205 P.2d at 663.

In the case before this Court, the witness was unaware of the order. Neither the State nor the defendant noted his presence until he had been in the courtroom for several

minutes. The testimony he heard was totally unrelated to
that which he was giving. Defendant has failed to demonstrate
prejudice.

### III. Evidence of Other Crimes

Defendant next argues that a mistrial should have been
granted when a witness made reference to the fact that
defendant had been in the state penitentiary. He contends
that this statement so tainted the jury with regard to
the defendant's character that he was denied a fair trial.

The Montana Rules of Evidence, Rule 404(b), prohibits
admission of evidence of other crimes, wrongs, or acts in
order to prove the character of the defendant and to show
that he was acting in conformity with that character. Such
evidence is admissible for other purposes, such as establishing
motive, opportunity, intent, preparation, plan, knowledge,
identity, or absence of mistake or accident. Rule 403 excludes
otherwise relevant evidence if its probative value is outweighed
by the danger of prejudice. Rule 403, Mont.R.Evid. This
Court established a four-pronged test based upon the above
two rules of evidence. The test is to be applied to determine
whether evidence of other crimes may be admitted. The four
factors are:

"(1)  similarity of crimes or acts;

"(2)  nearness in time;

"(3)  tendency to establish a common scheme,
plan or system; and

"(4)  the probative value of the evidence
is not substantially outweighed by the
prejudice to the defendant." State v.
Just (1979), ___ Mont. ___ , 602 P.2d 957,
961, 36 St.Rep. 1649, 1653. See also State v.
Case (1980), ___ Mont. ___ , 621 P.2d 1066,
1070-1071, 37 St.Rep. 2057, 2062.

The basis for this rule is that a defendant is entitled
to be informed of the offense charged so that he may prepare

a defense only to that particular offense. State v. LaVe (1977), 174 Mont. 401, 406, 571 P.2d 97, 100. He should not be subjected to surprise.

In this instance, a detective called by the State was questioned concerning a conversation he had with defendant. When asked what the defendant said to him, the detective replied:

> "He began to talk to me, and I asked him
> if he was aware of his rights, and he
> stated that he had been in the state
> penitentiary and he was well aware of his
> rights."

The statement that defendant had been in the state penitentiary was not responsive to the question posed by the prosecutor.

When the statement was made at trial here, defendant objected and asked that it be stricken from the record. The objection was sustained. Defendant then, during a hearing in chambers, moved for a mistrial. That motion was denied and the court later gave the jury a general instruction to ignore evidence that was rejected or stricken, to not speculate on objections or what answers might have been, and to not assume insinuations suggested by a question to be true.

In a criminal case, if prejudice is alleged, it will not be presumed but must be established from the record that a substantial right was denied. State v. Dupre (1982), ___ Mont. ___, 650 P.2d 1381, 1386, 39 St.Rep. 1660, 1666. See also section 46-20-701, MCA. The test that this Court has adopted in determining whether the prejudicial error requires a reversal is whether there is a reasonable possibility that the inadmissible evidence might have contributed to the conviction. State v. LaVe, supra, 174 Mont. at 407, 571

-11-

P.2d at 101; See also Chapman v. California (1967), 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 710; Kotteakos v. United States (1946), 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557, 1566-1567.

Defendant has not demonstrated that the detective's comment denied a substantial right. Nor has he shown that the one reference that he was "in the state penitentiary" might have contributed to his conviction in the instant case in the face of the overwhelming evidence introduced that directly proved defendant guilty of the offenses charged. This argument fails.

## IV.  Double Jeopardy/Multiple Convictions

Defendant next contends that constitutional and statutory provisions against double jeopardy were violated when he was convicted of both aggravated burglary and aggravated assault. He argues, first, that under the facts of this case the aggravated assault charge was completely merged with the aggravated burglary, and, second, that one fact-- the use of a knife--provided the aggravating circumstance raising both the burglary to aggravated burglary and the assault to aggravated assault. These contentions fail.

The double jeopardy prohibition contained in the Fifth Amendment to the United States Constitution has been applied to state proceedings since 1969. Benton v. Maryland (1969), 395 U.S. 784, 796, 89 S.Ct. 2056, 2063, 23 L.Ed.2d 707, 717. This prohibition protects a defendant from both multiple prosecutions for offenses arising out of the same transaction and from multiple punishments imposed at a single prosecution for the same offense. See North Carolina v. Pearce (1969), 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656, 664-665. Where, as here, defendant was tried at a single prosecution

for all of the statutory crimes in question, the issue is one of multiple punishments. State v. Close (1981), ____ Mont. ___, 623 P.2d 940, 949, 38 St.Rep. 177, 188.

The analysis that this Court has consistently applied in determining whether one offense is included within another offense is the test set forth in Blockburger v. United States (1932), 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309. In Blockburger, the Court ruled:

> "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." 284 U.S. at 304, 52 S.Ct. at 182, 76 L.Ed. at 309.

The Blockburger test is codified in section 46-11-502, MCA.

This Court has adopted the approach whereby the analysis is applied to the statutes in question rather than to the facts of the individual case. State v. Ritchson (1981), ___ Mont. ___, 630 P.2d 234, 237, 38 St.Rep. 1015, 1018. In determining whether multiple punishments should be allowed for offenses arising out of the same transaction, the dispositive question then becomes whether the legislature intended to provide for multiple punishments. State v. Close (1981), supra, 623 P.2d at 949, 38 St.Rep. at 188. "Blockburger's analysis must stand or fall on the working of the statutes alone, not on the indictment." Close, 623 P.2d at 950, 38 St.Rep. at 189. See also, State v. Buckman (1981), ___ Mont. ___, 630 P.2d 743, 745, 38 St.Rep. 1007, 1009; State v. Coleman (1979), ____ Mont. ____, 605 P.2d 1000, 1008-1009, 36 St.Rep. 1134, 1138-1140A; State v. Perry (1979), 180 Mont. 364, 368, 590 P.2d 1129, 1131; State

v. Davis & Close (1978), 176 Mont. 196, 199, 577 P.2d 375, 377; State v. Radi, supra, 176 Mont. at 462, 578 P.2d at 1176.

There are several bases for concluding that the legislature intended to permit punishment for both aggravated burglary and the related felony of aggravated assault.

First, in applying the Blockburger analysis to the statutes involved, we do not conclude that the offense of aggravated assault is the same offense as aggravated burglary. It is clear that one can commit aggravated burglary without committing aggravated assault and that one can commit aggravated assault without committing aggravated burglary.

Second, Montana case law interpreting the State's burglary statutes has consistently distinguished the crime of burglary from any other offense that the burglar intends to commit and has allowed prosecution for both. The essential elements of burglary have always been the wrongful presence of the burglar with an intent to commit another offense. It is not necessary to demonstrate that the related offense was in fact committed where the intent to commit it is shown. This Court has always observed that difference:

> "As early as Territory v. Willard, 8 Mont. 328, 331, 332, 21 P. 301, 302, this court noted the distinctions between burglary and larceny, stating: 'It is plain from the definitions that they [burglary and larceny] are two distinct crimes, and the larceny is not necessarily included in the burglary. In order to sustain the indictment for burglary it would only be essential to prove the felonious entry with the intent, while to convict on the charge of larceny, it becomes necessary to show the taking, for the entry may have been without any felonious intent. Burglary, on the other hand, may, as it frequently does, exist without actual theft, and larceny may be committed without burglary. Therefore, in making out the case of larceny, the prosecution need not have shown any burglarious intent or entering; it became only necessary to prove the usual elements of theft,--that is, the venue, the identity of the accused,

-14-

the felonious taking, the intent to convert
to the taker's use, the property stolen, its
value, the ownership, and that the offense
occurred within the time limited for such
prosecutions * * *.' The various decisions of
this court since the Willard case, supra, have
not materially departed from this explanation
of the two crimes." Morigeau v. State of
Montana & Ed Ellsworth (1967), 149 Mont. 85, 89,
423 P.2d 60, 62.

Since burglary is based upon the wrongful entry or

remaining with the requisite intent to commit an offense,

the burglary occurs at the time of unlawful entrance upon

the premises. State v. Solis (1973), 163 Mont. 293, 295,

516 P.2d 1157, 1158. See also State v. Harris (1972), 159

Mont. 425, 430, 498 P.2d 1222, 1225; State v. Moran (1963),

142 Mont. 423, 384 P.2d 777. The intent and the entry are

determinative.

". . . In Perkins on Criminal Law, p. 166
(1957), the author states:

"'Larceny is usually the purpose for which
burglary is committed but it is not essential
to guilt that the intruder succeed in carrying
out the intent with which the house was broken
into, nor that it should be for the purpose
of stealing. There is no common-law burglary,
however, unless the intrusion is perpetrated
with an intent to commit some felony. Thus
if a rogue breaks into the dwelling of another
at night with intent to commit murder he is
guilty of burglary even if he leaves without
finding his intended victim and without having
committed any felony in the house. On the
other hand he would not be guilty of burglary
if he broke in for the purpose of trespass
only even if he subsequently did commit some
felony during his wrongful visit.'" State v.
Austad (1975), 166 Mont. 425, 428, 533 P.2d
1069, 1070.

The third basis for finding that the legislature intended

multiple punishments is its adoption of the Montana Criminal

Code of 1973 and its subsequent amendment of the burglary

statutes. The 1975 revision added "unlawfully" after the

requirement that a burglar "knowingly enters or remains . . ."

This change reflects a clear intention to return to the

-15-

common law view that "the gravamen of burglary was the threat to person resulting from the wrongful intrusion" into someone's occupied structure. Annotations, section 45-6-204, MCA, at 200. State v. Shannon (1976), 171 Mont. 25, 27, 554 P.2d 743, 744.

By contrast, the crime of aggravated assault deals with the more serious forms of assault. The crime of battery is merged with the assault provision and in all but subsection (1)(c) of the aggravated assault statute an actual physical contact or battery is required. Subsection (1)(c) requires reasonable apprehension of serious bodily injury caused by use of a weapon. Annotation, section 45-5-202, MCA, at 146.

The focus of the aggravated assault statute is on the victim and the actual injury to him or his reasonable apprehension of serious bodily injury caused by use of a weapon. While the crux of the burglary statute is to prevent the threat to a person resulting from the unlawful intrusion into his property, it is not necessary that a burglary victim be harmed in any way or that the victim even be aware of the threat to his person from the unlawful intrusion.

The legislature unmistakably intended multiple punishments for the offenses of aggravated burglary and aggravated assault. If a person enters or remains unlawfully in an occupied structure with the intent to commit an aggravated assault, he has committed a burglary. If he then commits the aggravated assault, he may be convicted of it and sentenced for it in addition to conviction and sentencing for the burglary.

Defendant's second argument, that he was placed in double jeopardy since the use of a knife was the one aggravating circumstance raising both crimes to the aggravated level, is

-16-

without merit. Again, the _Blockburger_ analysis as applied
to the statutes will not result in a finding of double
jeopardy. In addition, under the facts of the instant case
there is still no possibility that the use of the knife
raised both crimes to the aggravated level.

Defendant was charged with aggravated assault under
subsection(1)(b) of 45-5-202, MCA. The jury was instructed
to find him guilty of aggravated assault if it found that he
had purposely or knowingly caused bodily injury to the
victim with a weapon. The factor raising the crime from
simple assault (purposely or knowingly causing bodily injury
to another) to aggravated assault was the use of a weapon--
the knife.

The aggravating factors raising the burglary to aggravated
burglary were two-fold. The elements of simple burglary are
that a person enter or remain unlawfully in an occupied
structure with the purpose to commit an offense therein.
Aggravated burglary requires (1) the defendant's intent that
the offense be a felony and, (2) that in effecting entry,
committing the offense or in flight thereafter, the defendant
purposely, knowingly, or negligently inflicts or attempts
to inflict bodily injury upon another. Section 45-6-204(2)
(b), MCA. Here, the jury was instructed that in order to
find defendant guilty of aggravated burglary, it would have
to find: that he entered or remained unlawfully in the
occupied structure, with the purpose to commit aggravated
assault, and that in the course of committing the offense he
purposely, knowingly, or negligently inflicted bodily injury
upon anyone.

The aggravating factor for assault was use of the
weapon. The aggravating factors for the burglary were that

-17-

the offense was a felony and that defendant purposely, knowingly, or negligently inflicted bodily injury upon anyone. There was ample evidence presented to the jury to support conviction for aggravated assault (bodily injury with the knife) and a conviction for aggravated burglary (an intent to commit aggravated assault and bodily injury resulting from choking the victim or hitting her on the head). The jury instructions given on aggravated burglary allowed an independent conviction for the burglary without a conviction for aggravated assault. The jury could have convicted defendant of aggravated burglary if it found that the State proved intent to commit the felony (aggravated assault). The jury could have found the related aggravated assault if it found that defendant placed the victim in serious apprehension of bodily injury with a weapon by holding a knife in front of her face. Finally, the jury could have found that defendant committed the underlying aggravated assault by inflicting serious bodily injury upon the victim. The attending physicians testified that Terry received life threatening wounds. Defendant was not placed in double jeopardy.

V. Chain of Custody

Defendant challenges the chain of custody of exhibits "A", "B", "D", and "E" and contends that testimony as to those exhibits and exhibits "F" and "G" should have been stricken. He asserts that the chain of custody was not foolproof and that the evidence was therefore inadmissible.

It is not necessary for the State to prove that it would be impossible to tamper with the exhibits. State v. Nelson (1978), 178 Mont. 280, 288, 583 P.2d 435, 439; State v. Fitzpatrick (1973), 163 Mont. 220, 230, 516 P.2d 605, 611-612.

-18-

Rather, the State need only make a _prima_ _facie_ showing that there has been no substantial change in the evidence. State v. Wong Fong (1925), 75 Mont. 81, 87, 241 P. 1072, 1074. After such a showing, the burden of proof shifts to the defendant to show why the evidence should not be admitted. State v. Armstrong (1980), ___ Mont. ___, 616 P.2d 341, 355, 37 St.Rep. 1563, 1579. Adequacy of the foundation for the admission of evidence is within the discretion of the District Court and its determination of adequacy will not be overturned absent a clear abuse of discretion. State v. Thomas (1975), 166 Mont. 265, 268-269, 532 P.2d 405, 407.

Exhibits "A", "B", "D" and "E" were properly admitted. Each exhibit (corduroy pants, a t-shirt, a sheet, and a pillowcase) were identified by three or four police officers. The items were each described in detail and identified by color, by particular patterns of blood spots, and by designs. In each instance, the officers testified that the items were in substantially the same condition as on the night of the crime. Extensive testimony described the labeling, storing, and testing procedures used for each item. Defendant has raised no possibility of actual tampering. The exhibits were properly admitted.

Defendant also argues that testimony in reference to exhibits "F" and "G" should be stricken from the record. These exhibits were vials of blood taken from the victim and from defendant for use in blood typing tests run on other exhibits. Extensive testimony was presented that chronicled the chain of custody from the taking of the samples, storage and delivery to the State Crime Laboratory in Missoula; storage and testing there; their return to Great Falls; and

storage until trial. Expert testimony on the results and conclusions of the blood tests was also given. It established that the blood covering defendant when he was apprehended was that of the victim.

At no point during trial did defendant object to this testimony. He may not now on appeal raise this issue for the first time. State v. Campbell (1981), ___ Mont. ___, 622 P.2d 200, 202, 38 St.Rep. 19, 22. The testimony was properly allowed. The exhibits were properly admitted.

Affirmed.

_____
John C. Sheehy
Justice

We Concur:

_____
Frank I. Haswell
Chief Justice

_____
Gene B. Daly

_____
John Conway Harrison

_____

_____
Frank H. Morrison

_____
Justices

Mr. Justice Daniel J. Shea, dissenting:

The sentences imposed for two of the three convictions fly in the face of the double jeopardy provisions of our state and federal constitutions. Defendant has been sentenced three times for inflicting bodily injury on Terry W; this has not only subjected him to double jeopardy, it has subjected him to triple jeopardy.

Defendant was sentenced to a total of 150 years in prison—the sentences to be served consecutively. For the conviction of Count I, aggravated assault, he was sentenced to the statutory maximum—20 years in prison. For the conviction of Count II, aggravated attempted sexual intercourse without consent, he was sentenced to the statutory maximum—40 years in prison. For the conviction of Count III, aggravated burglary, he was sentenced to the statutory maximum—40 years in prison. In addition, he was sentenced to 50 more years in prison because the court found him to be a persistent felony offender.

The 40 year sentence imposed for the Count II, aggravated attempted sexual intercourse without consent conviction is unconstitutional, and the 40 year sentence imposed for the Count III, aggravated burglary conviction is unconstitutional.

The vital double jeopardy questions in this case have been missed by the defendant, by the State, and by the majority. The question is not the narrow one of whether the aggravated assault charge or conviction is merged in the aggravated burglary charge or conviction—although I believe the defendant has a good argument on this point. Rather, the question is whether it is constitutionally permissible to punish the defendant three times for inflicting bodily injury on Terry W.

Each of the three convictions are based on an essential finding that defendant inflicted bodily injury on Terry, and, more important

21

to this case, each of the sentences imposed are necessarily based on this essential finding. How many times can a defendant be punished for inflicting the same bodily injury?

Following is a summary of how the sentences operated to impose double jeopardy and even triple jeopardy for the infliction of bodily injury.

Count 1. Aggravated assault carries a maximum sentence of 20 years in prison. To convict defendant of aggravated assault the jury was required to find as an essential fact that defendant inflicted bodily injury on Terry W. Defendant was convicted; and defendant was given the maximum prison sentence--20 years. He therefore was punished for inflicting bodily injury on Terry W.

Count 2. A conviction of attempted sexual intercourse without consent could result in a maximum prison sentence of 20 years. However, a conviction of aggravated attempted sexual intercourse without consent, could result in a maximum prison sentence of 40 years. To convict defendant of aggravated attempted sexual intercourse without consent the jury was required to find as an essential fact that defendant inflicted bodily injury on Terry W. Defendant was convicted--and defendant was given the maximum prison sentence--40 years. He therefore was punished for inflicting bodily injury on Terry W. Because he was already punished in Count I for inflicting bodily injury on Terry W, the additional 20 years constituted double jeopardy.

Count 3. A conviction of burglary carries a maximum prison sentence of 10 years. However, a conviction of aggravated burglary can result in a maximum prison sentence of 40 years. To convict defendant of aggravated burglary the jury was required to find as an essential fact that he inflicted bodily injury on Terry W. Defendant was convicted of aggravated burglary--and he was given the maximum prison sentence--40 years. He therefore was punished for

22

inflicting bodily injury on Terry W. However, he was already punished in Counts I and II for inflicting bodily injury on Terry W. This sentence goes a step beyond the constitutional prohibition of double jeopardy: it constitutes triple jeopardy.

I next proceed with an analysis of the three convictions and sentences:

I.   THE AGGRAVATED ASSAULT STATUTES AND THE COUNT I AGGRAVATED ASSAULT CONVICTION IN RELATION TO INFLICTION OF BODILY INJURY.

The felony assault statute (section 45-5-202, MCA, aggravated assault) and the misdemeanor assault statute (section 45-2-201, MCA, assault) are primarily directed at conduct resulting in an actual battery. (Each statute, however, has one exception not involved here in which an actual battery need not be inflicted to complete the crime.) The statutes focus on the severity of the injury and on whether a weapon was used.

Infliction of serious bodily injury, regardless of whether a weapon was used, can constitute an aggravated assault. Section 45-5-202(1)(a), MCA. On the other hand, if a weapon is used, infliction of bodily injury (as opposed to _serious_ bodily injury) is sufficient to constitute an aggravated assault. Section 45-5-202(1)(b), MCA. However, if only bodily injury is inflicted, but no weapon is used, it constitutes only a misdemeanor. Section 45-5-201(1)(a), MCA.

Count I charged aggravated assault by alleging that defendant ". . . purposely or knowingly caused _bodily injury_ to Terry W. with a weapon, a knife, by stabbing Terry six times in the back." By this charge the State was required to prove not only that a weapon (knife) was used, but also that Terry W. sustained _bodily injury_--both essential elements of the crime of aggravated assault as charged under section 45-5-202(1)(b), MCA.

23

The jury was instructed on the definition of assault (instruction 12) and jury instruction 13 told the jury what must be proved:

> "To sustain the charge of aggravated assault the State must prove the following proposition: That the defendant purposely or knowingly caused bodily injury to Terry W. with a weapon." (Emphasis added.)

This instruction, although phrased as one "proposition," actually contains three essential elements: (1) That defendant acted purposely or knowingly; (2) that he inflicted bodily injury; and (3) that he used a weapon.

The jury convicted defendant and by so doing it necessarily found all essential elements--including the finding that defendant inflicted bodily injury. Without the essential finding that defendant inflicted bodily injury, the jury could not have convicted him of the charge. A conviction of aggravated assault carries a prison sentence of "not less than 2 years nor more than 20 years." Section 45-5-202(2), MCA. Defendant was sentenced to the maximum--20 years in prison. This sentence clearly punished defendant for inflicting bodily injury, an essential element of the offense.

The trial court was clearly authorized to sentence defendant to the maximum 20 years in prison for this offense, and no double jeopardy problem arises because of this sentence alone. A double (and triple) jeopardy problem does arise, however, because of the sentences imposed for the conviction of Count II and Count III, each of which required, in order for the sentence to be increased, an essential finding that defendant inflicted bodily injury.

II. THE SEXUAL INTERCOURSE WITHOUT CONSENT STATUTES AND THE COUNT II CONVICTION IN RELATION TO INFLICTION OF BODILY INJURY.

I first emphasize that defendant has raised no issue concerning the Count II conviction or the 40 year sentence imposed because of

the finding of an aggravating factor--the infliction of bodily injury. However, his constitutional rights have been affected and we cannot ignore them and claim to do justice as an appellate court.

The Count II charge requires application of three statutes: first, the statute defining sexual intercourse without consent; second, the subsection of this statute permitting an increased sentence if an aggravating factor surrounding the commission of the crime is found to exist; and third, the general attempt statute which provides that it is a crime to attempt a crime, and which further provides that the penalty upon a conviction is the same as though the offense had been completed.

The sexual intercourse without consent statute, section 45-5-503(1), MCA, defines the crime as: "Any person who knowingly has sexual intercourse without consent with a person of the opposite sex not his spouse commits the offense of sexual intercourse without consent." Subsection (2) of this statute provides that one convicted of the crime "shall be imprisoned in the state prison for a term of not less than 2 years or more than 20 years." However, under subsection (3) of this statute, if an aggravating factor is found to exist together with proof of the crime itself, the maximum sentence can be increased to 40 years in prison. Subsection 3 provides:

> "If the victim is less than 16 years old and the offender is 3 or more years older than the victim or <u>if the offender inflicts bodily injury upon anyone in the course of committing</u> sexual intercourse without consent, he shall be imprisoned in the state prison for any term of not less than 2 years or more than 40 years . . ." (Emphasis added.) Section 45-5-503(3), MCA. (See Appendix A to this dissent for a discussion of this aggravating factor.)

II. ATTEMPTED SEXUAL INTERCOURSE WITHOUT CONSENT.

And now to the attempt statute. Section 45-4-103(1), MCA, defines an attempt, and subsection (3) of this statute provides the

25

penalty: "A person convicted of the offense of attempt shall be punished not to exceed the maximum provided for the offense attempted." Applied here, this means that a conviction of attempted sexual intercourse without consent could result in a prison sentence of 20 years--the maximum penalty for the crime of sexual intercourse without consent.

However, although the State alleged the charge as attempted sexual intercourse without consent, the actual charge was that of <u>aggravated</u> attempted sexual intercourse without consent. In addition to charging the elements of an attempt to commit the crime, the State charged that defendant <u>inflicted</u> <u>bodily</u> <u>injury</u> upon Terry W. The allegation in the charge that "<u>the</u> <u>victim</u> <u>suffered</u> <u>bodily</u> <u>injury</u>" became the fourth essential fact the State was required to prove. Jury instruction 18 set forth the essential elements of the offense:

> To sustain a charge of Attempt (Sexual Intercourse Without Consent), the State must prove the following propositions:
>
> "First: that the defendant, with the purpose to commit sexual intercourse without consent, performed any act toward the commission of the offense of sexual intercourse with Terry W.; and
>
> "Second: that Terry W was not the defendant's spouse; and
>
> "Third: that the attempted act of sexual intercourse was without the consent of Terry W; and
>
> "Fourth: that the defendant, while attempting to commit sexual intercourse without consent, <u>inflicted</u> <u>bodily</u> <u>injury</u> on any persons." (Emphasis added.)

This same instruction also told the jury to find defendant guilty if it found all four elements to exist beyond a reasonable doubt, but to find him not guilty if it found any of those four elements was not proved beyond a reasonable doubt.

Whether infliction of bodily injury is an essential element of the offense (I do not think it is), or whether it is only an

26

aggravating factor the proof of which triggers the potential imposition of a 40 year prison sentence, the fact is that the jury was instructed that infliction of bodily injury is an essential element of the offense. Based on jury instruction 18, supra, the jury could not have found defendant guilty of the attempt unless it also found that he inflicted bodily injury.

Furthermore, in the context of the maximum permissible sentence, it makes no difference whether infliction of bodily injury is an essential element of the offense or whether it is simply the aggravating factor, the proof of which can trigger a higher maximum sentence. The result is the same: in each situation, infliction of bodily injury is the basis on which the higher sentence can be imposed.

A double jeopardy violation could have been avoided here if the trial court sentenced defendant to a maximum 20 years in prison. This is so because the maximum sentence permitted for a conviction of sexual intercourse without consent (section 45-5-503(2), MCA) or for conviction of an attempt (section 45-4-103(3), MCA) is 20 years. But any sentence beyond 20 years violates the double jeopardy clauses because it must of necessity rely on an underlying finding that defendant inflicted bodily injury. Because a finding of infliction of bodily injury was essential to the conviction of Count I, aggravated assault, it could not once again be used as the basis for an increased sentence because of a conviction of aggravated attempted sexual intercourse without consent. Once is permissible--twice is double jeopardy.

The remedy for this Count II conviction is not to reverse the conviction, but simply to remand for resentencing, with instructions that any sentence beyond 20 years is constitutionally impermissible as constituting double jeopardy.

27

III.  THE BURGLARY AND AGGRAVATED BURGLARY STATUTE AND THE COUNT III AGGRAVATED BURGLARY CONVICTION IN RELATION TO INFLICTION OF BODILY INJURY.

The sentence imposed for the Count III, aggravated burglary conviction, has resulted in a double (triple) jeopardy violation. Burglary carries a maximum sentence of 10 years in prison. Aggravated burglary carries a maximum sentence of 40 years in prison.  The essential finding raising the crime from burglary to that of aggravated burglary, was that defendant inflicted bodily injury on Terry W.  The 40 year prison sentence punished defendant a third time for inflicting bodily injury--a clear double (triple) jeopardy violation.

Section 45-6-204, MCA, defines burglary _and_ aggravated burglary.  Subsection (1) defines burglary:

> "A person commits the offense of burglary if he knowingly enters or remains unlawfully in an occupied structure with the purpose to commit an offense therein."

Aggravated burglary is defined by subsection (2) of the burglary statute.  It provides:

> "A person commits the offense of aggravated burglary if he knowingly enters or remains unlawfully in an occupied structure with the purpose to commit a felony therein and:
>
> "(a)  In effecting entry or in the course of committing the offense or in immediate flight thereafter, he or another participant in the offense is armed with explosives or a weapon; _or_
>
> "(b)  In effecting entry or in the course of committing the offense or in an immediate flight thereafter, _he purposely, knowingly, or negligently inflicts or attempts to inflict bodily injury upon anyone._" (Emphasis added.)   (See Appendix B to this dissent.)

The penalty for burglary and aggravated burglary is provided by section 45-6-204(3), MCA.  It provides:

> "A person convicted of the offense of burglary shall be imprisoned in the state prison for any term not to exceed 10 years.  A person convicted of the offense of

aggravated burglary shall be imprisoned in the state prison for any term not to exceed 40 years."

The charge alleged the elements of burglary but added as the final element, the allegation that defendant committed aggravated burglary. The State alleged that defendant entered an occupied structure ". . . with the purpose to commit a felony therein, aggravated assault, and in the course of committing the offense, he purposely, knowingly or negligently inflicted bodily injury upon Terry W." Proof that defendant inflicted bodily injury is the essential fact which changed the crime from one of burglary to one of aggravated burglary. (See Appendix B to this dissent.)

The jury was instructed that infliction of bodily injury was an essential element of the charge of aggravated burglary. Jury instruction 22 defined aggravated burglary:

"A person commits the offense of aggravated burglary who knowingly enters or remains unlawfully in an occupied structure with the purpose to commit a felony therein, and in the course of committing the offense he purposely, knowingly, or negligently inflicted bodily injury upon anyone." (Emphasis added.)

And jury instruction 23 set forth the elements which the State was required to prove for the charge of aggravated burglary:

To sustain the charge of aggravated burglary, the State must prove the following propositions:

"First: That the defendant knowingly entered or remained unlawfully within an occupied structure;

"Second: That the defendant did so with the purpose to commit aggravated assault a felony, therein; and

"Third: That in the course of committing the offense the defendant purposely, knowingly or negligently inflicted bodily injury upon anyone." (See Appendix B to this dissent.)

This instruction also told the jury that it must convict if it found all three elements to be proved beyond a reasonable doubt, and that it must acquit if it found any one of the elements not proved beyond a reasonable doubt.

29

The aggravated burglary charge presented to the jury an all or nothing situation. That is, the jury was not given the option of convicting defendant of aggravated burglary or burglary--burglary being in essence a lesser-included offense. Rather, the jury was to decide only whether defendant was guilty or innocent of the charge of aggravated burglary.

In finding defendant guilty of aggravated burglary, the jury necessarily found that defendant inflicted bodily injury on Terry W--the essential fact which raised the crime from that of burglary to that of aggravated burglary. (See the third element of instruction 23, supra.) This finding, however, served yet another function insofar as sentencing is concerned. It raised the permissible sentence from 10 years (that permitted for a conviction of plain burglary) to 40 years (that permitted for a conviction of aggravated burglary).

In sentencing defendant to 40 years in prison for the conviction of aggravated burglary, the court necessarily relied on the jury's finding that defendant, in committing the burglary, inflicted bodily injury on Terry W. This sentence punished defendant for yet a third time for inflicting bodily injury on Terry W. Once is permissible--twice is impermissible as constituting double jeopardy--and three times is impermissible as constituting triple jeopardy.

The remedy for this Count III conviction is the same as the remedy for the Count II conviction. The conviction should be upheld but the sentence should be vacated with instructions that any sentence beyond 10 years (the maximum permissible for burglary) is constitutionally impermissible as constituting double jeopardy.

SUMMARY

The Count I, aggravated assault conviction and the sentence should stand. The Count II, aggravated attempted sexual intercourse

30

without consent conviction should stand (but see Appendix A to this dissent) but the sentence must be vacated with instructions that any sentence beyond 20 years is constitutionally impermissible—as constituting double jeopardy. The Count III, aggravated burglary conviction should stand (however, see Appendix B to this dissent) but the sentence must be vacated with instructions that any sentence beyond 10 years (the maximum sentence for burglary) is constitutionally impermissible—as constituting double jeopardy.

It behooves those who represent defendants in criminal cases, to not only carefully study the law applied to the case as it is processed through the trial stages, but to also devote more time and careful study to the sentencing statutes to be sure that their clients are not victimized by an application of the sentencing laws which ignores our constitutions—such as the double jeopardy violations which I believe to exist in this case.

I cite as another example the case of State v. Transgrud (1982), ___ Mont. ___, 651 P.2d 37, 39 St.Rep. 1765, a situation in which I believe defendant was clearly subjected to a double jeopardy application of the sentencing laws. The case was submitted on briefs. Although defendant did not raise the issue and the majority did not see this underlying issue in their process of reviewing the issues raised, I nonetheless recognized the issue and raised it in my dissent. Had the issue been raised, the defendant may well have achieved a different and the proper result insofar as his sentence was concerned.

Now in vogue is a policy of imprisoning as many convicted felons as possible for as long as possible. And so it is that mandatory sentencing statutes and statutes which increase the penalties because of aggravating factors, are now in vogue. In this case, no mandatory penalties existed, but more severe maximum sentences existed. In the case of the Count I, assault conviction,

31

the minimum sentence was 2 years and the maximum sentence was 20 years. Defendant was sentenced to the maximum 20 years. In the case of Count II, aggravated attempted sexual intercourse without consent conviction, the minimum sentence was 2 years and the maximum sentence was 40 years in prison. Defendant was sentenced to the maximum 40 years in prison. For the Count III, aggravated burglary conviction, the minimum sentence is simply any term not to exceed 40 years in prison. Defendant was sentenced to the maximum 40 years in prison.

Regardless of these popular trends, either mandated by statutes or sensed by sentencing courts who are responding to popular sentiment, I trust that at least most of our citizens recognize and accept the fact that our United States and Montana Constitutions still exist, and that their provisions ought not to be as responsive to the prevailing winds.

It is the duty of the courts to give meaning to these constitutions. Too often the trial courts are unwilling to rule in a way they knew they should because the decision will be unpopular. They would rather have an appellate court be the scapegoat for an unpopular decision.

_Daniel J. Shea_
Justice

As stated, defendant was charged under section 45-5-503, MCA, as though the aggravating factors listed in subsection (3) are part of the offense itself. However, subsection (1) clearly defines the offense, and subsection (3) simply sets forth the aggravating factors, which, if proved, make the sentencing potential more severe--40 years maximum as opposed to 20 years maximum.

The question, therefore, arises as to whether these aggravating factors can be charged as part of the offense itself. If they can, they effectively change the definition of the defense as set forth in subsection (1). If they cannot be charged as elements of the crime, the question arises as to how these elements are proved. Can they be listed as separate factors on which the jury must make special findings? Or, can they simply be factors which the State can prove as part of the sentencing process?

The manner in which these aggravating factors are set forth in section 45-5-503, MCA, suggests that they are not elements of the offense itself. (By contrast see, the aggravating factors set out in the burglary statute, section 45-6-204, discussed in Part III of this dissent and in Appendix B.) If they are not elements of the offense, it logically follows that the State need not prove these factors to the jury but instead can prove these factors after conviction as part of the sentencing process. In such case, due process would obviously require that the State give notice to defendant of its intent to rely on aggravating factors listed in subsection (3) of this statute.

33

A further question is whether the sentencing court as part of the sentencing process, can, on its own motion, rely on these aggravating factors in determining what sentence to impose. Again, if this is permissible, due process would require that defendant be given notice of the court's intent.

Defendant could argue, on the other hand, that he should not be deprived of a jury trial on such essential factors--factors which, if proved, allow the trial court to double the sentence. Along with an argument of a right to jury trial, however, is the question of whether the jury can make special findings on these aggravating factors. Arguably, special findings would offend section 46-16-603(1), MCA, which requires that in all criminal cases the verdict be a general verdict only.

A further question presents itself. Arguably, the aggravating factors set out in subsection (3) were meant only to apply to a situation in which there has been a conviction for the completed offense rather than to a conviction of an attempt to commit that offense. If this is so, a conviction of the attempt would result in a maximum 20 year prison sentence rather than the 40 years imposed here.

APPENDIX B

The burglary statute, in contrast to the sexual intercourse without consent statute (see Appendix A), defines two offenses: the offense of burglary (section 45-6-204(1)) and the offense of aggravated burglary (section 45-6-204(3). (See the text of this statute quoted in Part III of this dissent.)

In the context of this case, however, the essential feature which distinguishes the crime of burglary from that of aggravated burglary, is the allegation that while in the occupied house the defendant inflicted bodily injury on Terry W. Because of the manner in which defendant was charged, it was an all or nothing situation. That is, unless the jury found that defendant inflicted bodily injury on Terry W., defendant could not be convicted of any burglary charge. (See the jury instructions quoted in Part III this dissent.)

But whether one is punished more severely because he has inflicted bodily injury (Count II, attempted aggravated sexual intercourse without consent) or whether he is convicted of an offense which is made more serious by the infliction of bodily injury (Count II, aggravated burglary), the result is the same. In each situation the infliction of bodily injury is used as the basis for the more severe sentence. The result is double jeopardy. How many times can a defendant be punished for inflicting the same bodily injury?